350 So.2d 658 (1977)
STATE of Louisiana
v.
Mikel TRUDELL.
No. 59411.
Supreme Court of Louisiana.
September 19, 1977.
Concurring Opinion October 12, 1977.
*659 Edward Larvadain, Jr., Larvadain & Scott, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, III, Dist. Atty., Charles J. Yeager, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant, Mikel Trudell, was charged by bill of information with the March 22, 1973 armed robbery of Robert Bolton. La. R.S. 14:64. He was tried by jury, found guilty as charged, and was sentenced to serve sixty-five years at hard labor in the custody of the Department of Corrections.
On appeal defendant relies on two assignments of error for reversal of his conviction and sentence.

*660 ASSIGNMENT OF ERROR NO. 1
Defendant contends he was denied the equal protection of the law by the state's peremptorily challenging young blacks from the panel of prospective jurors. Defendant admits that at least one black an elderly woman went unchallenged, and that she served on the jury. He complains that "all of the young blacks [on the petit jury venire] were peremptorily challenged by the state."
We have consistently held that in order for a defendant to establish a constitutional violation in the state's exercise of its peremptory challenges to exclude blacks he must demonstrate a historical pattern of systematic exclusion. State v. Johnson, 343 So.2d 155 (La.1977); State v. Fletcher, 341 So.2d 340 (La.1977); State v. Bennett, 341 So.2d 847 (La.1976); State v. Haynes, 339 So.2d 328 (La.1976). Defendant here has made no showing of systematic exclusion over a period of time, and his assignment therefore lacks merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment, defendant complains that the trial judge erred in admitting his two confessions because the state did not prove they were made voluntarily.
Defendant Trudell was seventeen years old at the time of the armed robbery in question. Although he had gone through the ninth grade, he could not read and was apparently mentally retarded. On the night in question he was picked up at his home by two older friends, Samuel Miles and Tyree Williams, over the protests of his mother who begged him to stay home. They took him to the home of a man he knew, Robert Bolton, who ran a convenience store about two blocks from defendant's home. Armed with a sawed off shot gun and acting on the instructions of the two boys, he hid in some bushes near Bolton's home. When Bolton arrived, defendant demanded his money. After Bolton gave defendant his money, Trudell started back to get in his friend's car. When defendant thought his friends were beginning to drive away without him, he shot Bolton in the stomach. His friends picked him up; they divided up the money; and they took him home.
Defendant was soon arrested and questioned by members of the Rapides Parish Sheriff's Office. On March 24, 1973 and again on March 27, 1973, Deputy Sheriff Walter Reynolds took two statements from Trudell in which he recounted the events as described above, and stated that he was giving the statements voluntarily and after having been given Miranda warnings.
In response to a motion for appointment of a sanity commission, the trial judge appointed Doctors Roy D. Hill and William L. Kirkpatrick who examined Trudell on September 26, 1973 and concluded that:
"IN OUR OPINION, the accused, Michael Trudell, does not have the mental capacity to proceed and does not have the capacity to understand the proceedings against him or to assist in his defense. The said defendant does have a psychiatric disorder, mental retardation, moderate, with episodes of psychosis."
The trial judge then found that the accused did not have the mental capacity to proceed and sent the defendant to East Louisiana State Hospital at Jackson. In May of 1974 the trial judge was asked to reconsider Trudell's commitment. A second sanity commission was held and defendant was re-examined in November of 1974 by Dr. Julien Kennedy and on January 23,1975 by Dr. W. L. Kirkpatrick and Dr. Roy Hill. Although Dr. Kennedy initially found defendant able to proceed to trial, he did, along with Doctors Kirkpatrick and Hill, sign the commission report which found Trudell without the mental capacity to proceed to trial. The trial judge found a second time that the accused lacked the mental capacity to proceed.
In the fall of 1975, a sanity commission was appointed a third time to inquire into defendant's sanity. Drs. Kirkpatrick and Hill found at their September 12, 1975 examination that defendant had improved considerably and did not appear psychotic at the interview, although he remained, *661 they found, at a mental age of about nine years. The two psychiatrists had before this interview examined the two statements Trudell had given to police and determined that they "showed no evidence of psychosis." Neither doctor was swayed from his decision that Trudell was psychotic on the occasion of the two prior interviews, but Dr. Kirkpatrick concluded that defendant apparently "has episodes of psychosis and slips in and out of psychosis and also apparently is in a remission at the present time, because he is on intensive doses of tranquilizers and medication." Dr. Kirkpatrick also opined that Trudell is "extremely suggestible and very easily led." Dr. Hill made similar findings, and both doctors concluded that defendant then had the mental capacity to proceed to trial. The trial judge ruled defendant Trudell mentally capable to stand trial, and trial was held in August of 1976.
At trial the state, out of the presence of the jury, put forth its evidence to establish that defendant's statements were voluntary. Deputy Reynolds, who took the two statements, insisted that defendant was offered no inducements, threats or promises, was not mistreated by police and gave his statement voluntarily. The officers who witnessed the statements testified similarly. Defendant himself admitted each of these things on the taped statement, and put forth no evidence at all (his own testimony, psychiatric testimony, or psychiatric reports) at the predicate.
Nonetheless, some of the state's evidence suggested that defendant was mentally ill. When Deputy Reynolds was asked by the state if defendant appeared to be mentally ill at the time he took the statements, the deputy answered, "I did feel that he's not a normal individual, yes, sir. . . . He didn't appear to be a stable individual." He testified that defendant fainted immediately after giving the first statement and agreed with defense counsel on cross-examination that Trudell was a suggestible individual. In addition, of course, the court record contained the previously-described psychiatric reports.
With the predicate and record evidence before him, the trial judge, over defendant's objection, ruled the statements admissible and the tapes were played to the jury. The issue now facing us is whether that decision was in error.
In order for an inculpatory statement to be admissible in evidence against an accused at trial, the state bears the burden of establishing beyond a reasonable doubt that the statement was freely and voluntarily made. La.R.S. 15:451; State v. Glover, 343 So.2d 118 (La.1977); State v. White, 329 So.2d 738 (La.1976); State v. Skiffer, 253 La. 405, 218 So.2d 313 (1969). Once a trial judge has determined that the state has met its burden of proof, his decision is entitled to great weight on review. State v. White, supra; State v. Hall, 257 La. 253, 242 So.2d 239 (1970). The close issue here is whether, in view of the court record of Trudell's mental retardation and mental instability described hereinabove, it can be said that the state proved beyond a reasonable doubt that his confession was voluntarily and intelligently made.
While a claim of mental illness normally requires a defendant to establish by a preponderance of the evidence that he has a mental illness, where the voluntariness of his confession is at issue the state, having the burden of establishing that the confession was voluntary, still retains that burden. State v. Glover, supra. In such a case, the state must prove that defendant's level of mental illness did not preclude him from giving a voluntary statement and that he did in fact do so. Here, the court record of Trudell's mental retardation and psychotic state did establish that he was mentally ill. That finding still leaves us with the question of whether the state established that the mental illness from which defendant suffered at the time of the confessions prevented his statements from being voluntary because he lacked the mental capacity to make such statements.
In making this determination, we must look to the purposes behind the rule that only voluntary statements can be admitted at trial. In Glover we found two of these purposes to be to insure that convictions are *662 based on trustworthy and reliable evidence, see Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), and Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961) (Justice Douglas, concurring), and to guarantee that the statements were the products of defendant's free and rational choice. This latter rule was stated in Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) as follows:
"The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."
The record in this case clearly established defendant's mental retardation (with an I.Q. of about 60, or a mental age of about nine years). Additionally, the record ineludes evidence that at the time he committed the robbery and at the times of several of his psychiatric examinations he was a psychotic individual, easily led and very suggestible. Under these conditions, the state had a heavy burden of proving, beyond a reasonable doubt, that the confession was voluntary in that it was trustworthy and the product of a free and rational choice. State v. Glover, supra.
We find that the trial judge did not err in finding that the state had met this burden. The officers testified consistently that no promises, threats, or mistreatment were inflicted upon defendant, and he makes no such claim. The psychiatric records establish that Doctors Kirkpatrick and Hill found defendant with little or no psychosis at their last interview with him. Moreover, before that interview they had examined the transcripts of the very confessions at issue and found them to "show no evidence of psychosis and show an intact memory capacity."[1] It was examination of these statements which caused Dr. Kirkpatrick to reverse his previous finding that defendant Trudell was psychotic at the time of the offense, and to find instead that he was not psychotic at the time of the offense.[2]
In addition, we have studied the transcripts of these two lengthy taped statements *663 made three days apart beginning two days after the crime occurred. Defendant Trudell was responding to a series of questions to which he gave coherent and responsive answers with only very minor inconsistencies. He indicated that he wanted to explain what happened to the authorities so as to exonerate his brother (who had been arrested for the crime). The transcripts reveal that Officer Reynolds who questioned defendant asked straightforward questions which did not lead the defendant toward particular inculpatory answers. In short, the statements themselves reveal that defendant was lucid, oriented as to time and place, and apparently in control of his faculties at that time. When we review, therefore, the state's unrebutted predicate testimony that the statements were made voluntarily, the sanity commission reports indicating that the statements show "no psychosis," and the lucid statements themselves, we conclude that the state did establish beyond a reasonable doubt that the statements were made voluntarily. Accordingly, we find no merit in defendant's assignment of error.
For these reasons, we affirm defendant's conviction and sentence.
*664 SANDERS, C. J., concurs.
SUMMERS, J., concurs and will assign reasons.
DIXON, J., dissents with reasons.
MARCUS, J., concurs.
DIXON, Justice (dissenting).
There can be no knowing and intelligent waiver of a constitutional right by such a psychotic retardate as this defendant.
SUMMERS, Justice (concurring).
Insofar as this opinion purports to abolish the presumption that a defendant is sane and responsible for his actions, I must concur. La.Rev.Stat. 15:432. The presumption of sanity is not modified by the fact that a party has confessed. However, when the question of the confessor's sanity is raised, and the confessor has rebutted the presumption of sanity, the State must affirmatively establish the confessor's sanity to meet the free and voluntary test of admissibility. La.Rev.Stat. 15:432.
NOTES
[1] Dr. Hill testified at trial for the defendant in a similar manner, but that testimony, not introduced by either the state or defendant at the predicate, was not before the trial judge and forms no part of our decision. State v. Tucker, 332 So.2d 797 (La.1976); State v. Stevenson, 323 So.2d 762 (La.1975). It can be noted, however, that the psychiatrist's testimony in no way contradicted the sanity commission findings which were already a part of the record and properly used as a basis of the decision on admissibility.
[2] Dr. Kirkpatrick's third report follows, in full:

"PURSUANT TO THE ORDER OF THE NINTH JUDICIAL DISTRICT COURT IN AND FOR THE PARISH OF RAPIDES HAVING BEEN APPOINTED A MEMBER OF A SANITY COMMISSION TO EXAMINE MIKELL TRDELL TO DETERMINE HIS MENTAL CONDTION BOTH AT THE TIME OF THE ALLEGED COMMISSION OF THE OFFENSE AND AT THE PRESENT TIME, I DID, THEREFORE, EXAMINE THE ACCUSED ON 9-12-75, IN THE RAPIDES PARISH COURT HOUSE IN A ROOM ON THE FOURTH FLOOR, from 9:00 a.m. until approximately 10:30. This is the third time that I have examined the accused since 9-26-73, when I performed the first mental status examination. I again, performed an examination for the mental status on 1-23-75, and the presently listed date of 9-12-75. At the present time the patient's mental condition seems to have improved considerably over that of his two previous examinations. At this examination there was very little evidence of delusions or hallucinations or other psychotic material of which there was a considerable amount in the previous two examinations. He did not appear to be psychotic at this interview. The supplementary statements of Tyree Williams, Robert Bolton and Mikell Trudell on two occasions, as given to Walter Reynolds in 1973, were all reviewed prior to this examination. The patient states he is amnesic concerning the possibility of his shooting anybody or taking part in an armed robbery in March of 1973. However, he has enough intact memory concerning many other things occurring on the evening of the alleged armed robbery and attempted murder to make this examiner feel that the patient is lying and actually could now tell about the armed robbery and attempted murder as he did to Walter Reynolds on March 24, 1973 and March 27, 1973 in his statement. His memory loss is too convenient. I feel he remembers all of this material as he is able to recall much of this material, but denies knowing anything about shooting anybody or taking part in any armed robbery. After carefully reviewing the supplementary statements by Mikell Trudell on Mary [sic] 24 and March 27, 1973, I am forced to reverse my previous opinion that he was psychotic at the time of the alleged commission of the armed robbery and attempted murder. These interviews taken on 3-24-73 and 3-27-73 show no evidence of psychosis and show an intact memory capacity and were taken by Mr. Walter Reynolds shortly after the occurrence of the alleged crime. I feel however, that the patient was definitely psychotic at the time I first examined him in September, 1973, and was again psychotic when he was re-examined in January, 1975. He apparently has episodes of psychosis and slips in and out of psychosis and also apparently is in a remission at the present time, because he is on intensive doses of tranquilizers and medication. My examination, at this time consisted of a psychiatirc [sic] examination including case history, present mental status, orientation, intelligence, memory function for recent and remote events, presence or absence of confusion, presence of coherence, evaluation of any disturbance of thinking or inappropriatness [sic] of emotional responses and presence or absence of delusions, hallucinations or other psychotic manifestations. There were no psychological tests given except the Kent Emergency Test, a brief I.Q. Test which was given the patient. He scored at the mental age of 9 years and is definitely mentally retarded to a mild degree.
CONCLUSION
IN MY OPINION, the accused, Mikell Trudell, does have the mental capacity to proceed if he so desires and does have the capacity to understand the proceedings against him or to assist in his defense.
He does have a psychiatric disorder, Mental Retardation, Mild, with episodes of psychosis, but seems to be in remission of his psychosis at the present time. He is able to understand the object, nature, and consequences of the proceedings against him. I feel he is able, if he wants to and will, to communicate with his counsel in a meaningful manner and I feel that when he states he does not recall shooting anybody or participating in an armed robbery that he is lying flagrantly, in as much as he has memories of many other events that occurred at about the same time. Despite his mental retardation he is smart enough to realize that his confession would implicate him in a serious crime and I think he understands some of the consequences of this crime. He said he might get sent to Angola when questioned by the examiner, but wasn't worried about it.
The patient is mentally retarded. He is extremely suggestible and very easily led. It is my opinion that if he was released out in the community he would not take his medicine since he feels that it interfers [sic] with his thinking and memory capacity now and would revert quickly back into a psychotic state or would have episodes of psychosis and probably he would be led to commit another serious crime. It is my further opinion that the accused tries to act more retarded or stupid than he actually is, realizing that he is getting out of the difficulty of going to Court to face the charges against him. I do not feel that his mental condition deprives him of the ability to disclose to counsel or testify concerning the pertinent circumstances, possible defenses and events in his life which should be peculiarily within his knowledge. I also feel Mikell knows the difference between right and wrong." [emphasis added]