419 So.2d 862 (1982)
STATE of Louisiana
v.
David LEFEVRE.
Nos. 81-KA-2988, 81-KA-3034.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*863 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Philip Boudousque, William C. Credo, III, Stephen Wimberly, Asst. Dist. Attys., for plaintiff-appellee.
Daryl A. Higgins, Marrero, for defendant-appellant.
WILLIAM NORRIS, III, Justice Ad Hoc.[*]
Defendant appeals a verdict of guilty of forcible rape and the resulting sentence as an habitual offender to sixty years at hard labor assigning as errors the trial court's denial of defendant's motion to suppress his confession and sentencing defendant as an habitual offender. We affirm the conviction and remand for proper sentencing.

FACTS
On August 9, 1980, at approximately 2:30 p. m., the female victim was leaving the A&P Store in the M. A. Green Shopping Center in Metairie, Louisiana, when the defendant approached her offering to help carry her groceries, which offer she declined. When the victim reached her car, she placed her bags and purse on the passenger side of the vehicle and proceeded to walk around the car to the driver's side. Thereafter, the defendant approached the victim from her left, placed a pair of scissors to her side and ordered her not to scream. He then told the victim that he only wanted her car and forced her to enter the vehicle and lie on the floor. After driving the victim around, the defendant stopped the car and ordered the victim to undress. He drove around with the victim lying nude on the seat until he later again stopped the vehicle and proceeded to accomplish the rape. The scissors remained on the seat within reach of the defendant; and during the rape, he actually choked her. After the rape, defendant returned the victim's clothes but took her driver's license from her purse along with some money and a picture of the victim's son. Defendant then threatened to find and kill the victim and her son if he was stopped and questioned, exited the vehicle and left the scene.
The victim fled to her mother's residence where she bathed, douched, brushed her teeth and changed clothes. Thereafter, she contacted the police.
One week later on August 16, 1980, the defendant was detained at the same shopping center where the initial abduction occurred. While interviewing a potential witness to the abduction, the police spotted the defendant and based on a description provided by the victim which included tattoos on the arms and a general physical description *864 he was detained for questioning. As the defendant was being taken to his place of employment he struck an officer and escaped for several hours after which he was apprehended.
After being taken to the police station and fully advised of his Miranda rights, the defendant confessed to the robbery and the rape. Detective Toca, the officer who actually took the confession, testified that defendant was advised of his constitutional rights from a standard "Miranda" form on two occasions, advised what he was under investigation for, and that defendant stated he understood his rights, waived them and signed the Miranda form so acknowledging. Detective Toca also testified there were no promises made defendant, nor was he coerced or induced whatsoever to get him to make a statement. He further described the defendant as being in a calm, collected state and appearing to be normal. Detective Toca's testimony was uncontradicted on these points.
The officer further testified that the confession was elicited by the use of a question and answer format. Under this procedure, the defendant would respond and as he did the officer would type the response on the statement form. After the statement was complete, the defendant read the statement, stated that it was correct and signed it. Admittedly, the statement was edited in some fashion. The officer stated that synonyms were used in place of "vernacular" terms used by the defendant in connection with his response describing his actions in raping the victim.[1] There were no material changes made in the statement; however, it does appear that some unanswered questions were left out of the body of the form and that answers to two or more questions were incorporated into one answer.
The defendant was indicted by the Jefferson Parish Grand Jury for the offense of aggravated rape in violation of La.R.S. 14:42. He originally pled not guilty but on April 9, 1981, changed his not guilty plea to not guilty and not guilty by reason of insanity.
A sanity hearing was convened on October 23, 1980, to determine if defendant was competent to assist counsel and to stand trial. After hearing extensive testimony from the members of the sanity commission, the trial judge concluded that the defendant had a problem communicating with and assisting counsel and needed further evaluation and treatment. Thereafter, defendant was transferred to the Feliciana Forensic Unit for this purpose where he remained until a second hearing was held on April 9, 1981, to determine if defendant was competent to stand trial. Based primarily on the testimony of Dr. Aris Cox, the director of forensic psychiatry for the state of Louisiana, it was concluded by the court that defendant's problems would not prevent him from assisting counsel.
After trial, defendant was found guilty of forcible rape and sentenced to serve 30 years at hard labor, without benefit of probation, parole, or suspension of sentence for two years. After the initial sentencing, the state filed a multiple offender bill under the provisions of La.R.S. 15:529.1. Defendant was found after a hearing to be a third felony offender after which the trial court vacated its original sentence and sentenced the defendant to serve 60 years at hard labor.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the defendant contends that it was error for the trial court to deny defendant's motion to suppress his confession.
The thrust of defendant's argument in connection with this assignment of error is two-fold. First, he contends that the state failed to carry its burden of proof of showing beyond a reasonable doubt that the defendant freely and voluntarily made the statement; and secondly, that if he in fact made an uncoerced statement, the resulting transcribed confession was so altered, edited or changed by the police that it gave the *865 jury an unrealistic and/or inaccurate insight into the defendant's state of mind at the time of the offense which effectively eliminated his defense of not guilty by reason of insanity.
We note at this point that there are no complaints made by defendant of police brutality, police promises, or police conduct designed to overcome defendant's will and to produce a confession not the voluntary product of his own choice. Rather, it is the argument of defendant that where insanity is an issue, to prove the voluntariness of a confession, the state must also prove beyond a reasonable doubt the defendant's mental defect did not preclude the voluntary giving of a confession. State v. Trudell, 350 So.2d 658 (La.1977).
The law is clear that when the issue on appeal is whether an accused's level of intellectual disability precludes him from effectively understanding the essential nature of his rights to silence and counsel and of the consequences of his speech, much weight is accorded to the trial court's assessment. State v. Coleman, 395 So.2d 704 (La.1981); State v. Trudell, supra; State v. White, 329 So.2d 738 (La.1976). Once the trial judge has determined that the state has met its burden of proof, his decision is entitled to great weight on review. State v. Coleman, supra; State v. White, supra; State v. Hall, 257 La. 253, 242 So.2d 239 (1970).
Opinions of experts on the question of "waiver" of constitutional rights may be helpful but are not binding on the trial court. The decision on the validity of a waiver is ultimately for the court. There is no controlling psychiatric principle. State v. Coleman, supra. See also State v. Bennett, 345 So.2d 1129 (La.1977).[2]
It is equally clear that the state bears the burden of proving beyond a reasonable doubt the voluntary nature of a confession. State v. Glover, 343 So.2d 118 (La.1977).
State v. Trudell, supra involved a somewhat analogous situation to the instant case. In Trudell, the court imposed a heavy burden of proving beyond a reasonable doubt that the confession which the state sought to introduce was voluntary, a product of free and rational choice. La.R.S. 15:451.[3] Trudell was a defendant who was mentally retarded and seventeen years of age at the time of the offense charged [armed robbery]. His IQ was approximately 60, he was psychotic, easily led and very suggestible. There, as in the instant case, the defendant was found to be unable to assist counsel and to lack the mental capacity to stand trial and was committed to the East Louisiana State Hospital at Jackson where he remained until he was found to be competent to stand trial. In the Trudell case, the defendant gave a statement which was held by the court to be admissible. This court found that the statement in question revealed that the defendant was lucid, oriented as to time and place and apparently in control of his faculties at that time. The statement coupled with the state's unrebutted predicate testimony that the statements were made voluntarily, the sanity commission reports indicating that the statements show "no psychosis" established beyond a reasonable doubt that the statements were made voluntarily.
Although we do not have available for our review, a recording of defendant's confession in this case, there are other factors which lead us to conclude that the trial court did not commit manifest error in determining that the state had met its burden of proof in establishing beyond a reasonable doubt that the statement was freely and voluntarily made. State v. Glover, supra.
*866 In the instant case, the defendant has an IQ of 80, which is classified in the dull/normal range. He functions as a slow learner. Additionally, it was the testimony of psychiatric experts that defendant's mental functioning may in fact be higher than that reflected by testing. It is further obvious from the testimony of all of the psychiatric experts that defendant is not suggestible; if anything, he is reluctant to cooperate when he chooses to be. It is obvious that he could not be coerced by those experts into assisting with a determination of his mental status; therefore, it could be concluded that he could not have likely been coerced or induced into cooperating with the officers who took his statement.
Although there is some conflict among the opinions expressed by the expert witnesses, the trial court chose to accept the testimony of Dr. Cox concerning the defendant's ability to assist counsel and his ability to provide a narrative statement concerning the events regarding the crime. Other psychologists and psychiatrists examined the defendant on isolated occasions and these examinations were of limited, short duration. Dr. Cox had the opportunity to examine the defendant on several occasions over a six month period of time and additionally had the benefit of the opinions of the staff of the forensic facility who had the opportunity to work with and observe the defendant over that same period of time before arriving at a final decision regarding defendant's condition. It was the opinion of Dr. Cox that defendant could give a narrative statement. He emphasized that the defendant understood the nature of the charges against him, and the hospital records entered into evidence support this conclusion. Other experts testified that Dr. Cox was in the best position to evaluate this complex patient, and we have no reason to disagree.
Obviously, one question that had to be determined by the trial court was whether or not the defendant's lack of cooperation was due to an inability to cooperate because of impaired mental functioning or whether or not the inability to cooperate was based on conscious choice. There is ample evidence in the record for the trial court to conclude and it obviously did conclude that the defendant chose at times not to aid the doctors or his attorney.
Therefore, we conclude that the trial court did not commit manifest error when it determined that the state had met its burden of proof in establishing beyond a reasonable doubt that the statement was freely and voluntarily made. State v. Glover, supra. The uncontradicted testimony of Detective Toca who advised defendant of his "Miranda" rights and the testimony of the experts combined with defendant's hospital records constitute a sufficient basis for the trial court to conclude beyond a reasonable doubt that defendant was competent to give the statement and that it was freely and voluntarily made. See State v. Coleman, supra.
Defendant's second argument in relation to this confession relates to the alleged tampering with the statement by the recording officer. Defendant contends that this confession was not introduced to prove the guilt of the defendant but rather to eliminate the defense of not guilty by reason of insanity by showing to the jury the literacy and competency of the defendant. The defense argues further that if words on the statement were altered then the resulting effect of the edited confession was to make it appear that defendant's mental state was better than was actually the case. There is nothing in the record to support defendant's contention that the sole purpose of admitting the statement was to show the literacy and competency of the defendant. To the contrary, there was no evidence that an act of rape occurred other than the testimony of the victim. There is no physical evidence in the record to corroborate the victim's testimony that she was actually raped. Therefore, it is equally plausible that the state introduced this confession for the purpose of corroborating the victim's statements that she was raped. It is further obvious that the failure of the state to introduce this confession could have caused the jury to find that the state had not proved beyond a reasonable doubt that a *867 rape had occurred. This conclusion is bolstered by the argument of defense counsel to the jury regarding the lack of physical evidence of an actual rape.
The testimony of the officer who recorded the confession indicates that changes were made in the wording of certain answers and that unanswered questions were edited from the form. The expert testimony was essentially to the effect that while the defendant was capable of making a narrative statement some of the words in the form probably were supplied by an outside source. The question presented is whether or not this is sufficient cause to totally suppress the confession. We conclude that under the facts and circumstances presented by this case this is insufficient cause for suppression of this confession. We conclude from the testimony that the changes or alterations in the words of the defendant did not so distort the confession as to make it useless. There is no testimony or other evidence to cast doubt on the testimony of the officer who testified that the changes were only minor. Furthermore, the psychiatric testimony was to the effect that the defendant was capable of speaking, reading and understanding the language utilized in the confession.
The law is clear that a statement given by a defendant does not have to be a verbatim record of the defendant's oral version. State v. Johnson, 327 So.2d 384 (La. 1976); State v. Goins, 232 La. 238, 94 So.2d 244 (1957); State v. Comery, 214 La. 245, 36 So.2d 781 (1948).
In the absence of efforts by the recording officer to make substantial material changes in the confession, the question becomes one of fact. The defendant could and did bring forth evidence in an attempt to show that the confession did not necessarily reflect a true mental picture. Defense counsel was given every opportunity to cross examine the officer regarding any changes and to present psychiatric testimony in support of his defense. In the absence of substantial material changes, the statement could go to the jury so that it, as the trier of fact, could determine its merit. While the law requires that every confession, admission, or declaration sought to be used against an accused must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford [La.R.S. 15:450], in the absence of proof to the contrary, the fact that the purported statement of the accused as testified to by the investigating officer does not consist of a verbatim reiteration of the conversation between them due to the witness' inability to recall or other valid explanation does not violate the rights of the accused. The law does not require the production of nonexistent portions of a confession or portions which cannot be recalled. State v. Marmillion, 339 So.2d 788 (La.1976).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, the defendant contends that it was reversible error for the trial court to convict and sentence the defendant as an habitual offender.
At the habitual offender hearing, Jefferson Parish Deputy Sheriff Johnnie Koeppin testified and identified defendant's fingerprints on an arrest register indicating an arrest for counts of simple burglary. In addition to the arrest register and the fingerprint card, the state filed into evidence a copy of the bill of information for simple burglary with accompanying minutes and a copy of a "waiver of rights" form executed by the defendant. Officer Koeppin also testified and identified defendant's fingerprints on an arrest register indicating an arrest for possession of stolen property valued at $1000. Additionally, the state filed into evidence a copy of a bill of information charging defendant with receiving stolen goods with accompanying minutes and a copy of another "waiver of rights" form signed by defendant in connection with this plea of guilty. The aforementioned constitutes all of the evidence presented by the state at this hearing.
The defendant objected at the habitual offender hearing to the predicate for the *868 state's evidence that the guilty pleas were knowing and voluntary in the earlier proceedings in which he pled guilty. Relying on State v. Nelson, 379 So.2d 1072 (La. 1980), defendant correctly contends that the burden of proof was then shifted to the state to show affirmatively a contemporaneous record that, at the time of the defendant's pleas he was informed and made a knowing waiver of his privilege against self-incrimination, his right to a trial by jury, and his right of confrontation.
In Nelson we stated as follows:
Thus, with respect to a conviction based on a guilty plea in a Louisiana court subsequent to December 8, 1971, if the defendant objects to the predicate for the state's evidence that the guilty plea was knowing and voluntary, the state has the burden of showing affirmatively a contemporaneous record that, at the time of the plea, the accused was informed of and made a knowing waiver of his privileges against self-incrimination, his right to a jury trial, and his right of confrontation. If the defendant does not object on this ground, the state, in order to establish the knowing and voluntary guilty plea, is required only to prove that the prior conviction resulted from the defendant's guilty plea at which he was represented by counsel. State v. Holden, supra, 375 So.2d [1372] at 1376.
In the instant case, because the defendant objected to the predicate for the state's evidence that the guilty plea was knowing and voluntary, the burden then shifted to the state to show a voluntary waiver of those constitutional rights. Because the record is devoid of any evidence indicating that the defendant was advised of and knowingly waived his privilege against self-incrimination, his right to a jury trial, and his right to confront his accusers, these guilty pleas cannot serve to enhance defendant's penalty under the multiple offender statute.

DECREE
Accordingly, for the foregoing reasons, the conviction of defendant is affirmed, but his sentence is vacated and set aside, and the case is remanded to the district court for further proceedings consistent herewith.
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] Our review of the record indicates that defense counsel never asked this witness what the "vernacular" terms used by defendant were.
[2] In State v. Bennett, supra, we cautioned trial courts not to base judgments regarding capacity to stand trial solely on conclusory opinions of experts unsupported by enumerated factors.
[3] La.R.S. 15:451 provides:

Before what purposes 1 [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. (Footnote omitted.)