529 So.2d 466 (1988)
STATE of Louisiana
v.
Leonard Gay JOHNSON a/k/a Leonard Kinchen.
No. 87 KA 1719.
Court of Appeal of Louisiana, First Circuit.
June 21, 1988.
Rehearing Denied September 2, 1988.
*467 Charles V. Genco, Asst. Dist. Atty., Amite, for plaintiff-appellee.
Marion B. Farmer, Covington, for defendant-appellant.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
The defendant, Leonard Gay Johnson, a/k/a Leonard Kinchen, was charged by grand jury indictment with forcible rape, in violation of LSA-R.S. 14:42.1. He pled not guilty and, after trial by jury, was found guilty of the responsive verdict of sexual battery, in violation of LSA-R.S. 14:43.1. On June 15, 1987, the defendant received a sentence of ten years at hard labor for this conviction. However, on July 8, 1987, the prosecution filed a habitual offender bill of information; and, after a hearing, the defendant was adjudicated a second felony offender. The trial court vacated the previously *468 imposed sentence and resentenced the defendant to serve fifteen years at hard labor. The defendant has appealed, alleging five assignments of error, as follows:
1. The trial court erred by continuing the trial, over defense objection, after the jury had been selected and sworn in.
2. The trial court erroneously adjudicated the defendant a habitual felony offender based on insufficient and inadmissible evidence.
3. The trial court erred in imposing an excessive sentence.
4. The evidence was insufficient to support the defendant's conviction of sexual battery.
5. The trial court erred in dismissing the defendant's motion for a preliminary examination.
Sometime after 2:00 a.m. on Saturday, May 10, 1986, the victim, a nineteen-year-old female, was beaten by the defendant and forced to engage in sexual intercourse. At the trial, the victim testified that on Friday, May 9, 1986, she had driven to Ponchatoula to visit Anita Keaton, a close family friend, always referred to as "Aunt Anita." She was accompanied by her friend, Beth Hyde. The two girls were going to babysit Ms. Keaton's children on Saturday, May 10th.
The victim and Ms. Hyde arrived at Ms. Keaton's house at approximately 9:00 p.m. on Friday, May 9. The two girls decided to go out dancing and went in Ms. Hyde's car to Razzy's Bar in Hammond. They arrived at Razzy's at approximately 11:00 p.m. and remained until the bar closed at approximately 2:00 a.m. Both Ms. Hyde and the victim testified that they each consumed only three drinks and that they were certain of this fact because they had not brought enough money to buy more. However, both girls became extremely "intoxicated" or perhaps drugged. Both Ms. Hyde and the victim testified that they acted as if intoxicated but could not possibly have been intoxicated because they had only consumed three drinks each. Both Ms. Hyde and the victim speculated that someone had put something in their unattended drinks to create their seemingly "intoxicated" condition.
Ms. Hyde testified that, while in the bar, the girls had met two men, the defendant and another man known only as "Joe." Ms. Hyde testified that the defendant had approached them and tried to persuade them to dance with him. She testified that she informed the defendant that they were not interested in him but in another man at the bar, whereupon the defendant replied that this other man was a friend of his and that he would introduce his friend to them. The other man, known only as "Joe" was introduced to the girls by the defendant.
At approximately 2:00 a.m., the bar closed; and neither the victim nor Ms. Hyde was able to drive. When the victim and Ms. Hyde left the bar, Ms. Hyde was with Joe and the victim was with the defendant. The defendant and Joe offered to drive the girls to a hotel, and the girls apparently agreed. Joe drove Ms. Hyde in her car, and the victim rode with the defendant in his truck. The defendant checked them into the Best Western Hotel in Hammond. According to Ms. Hyde, the victim had been feeling ill since they left the bar. Nevertheless, the defendant did not cease making sexual advances to the victim. Ms. Hyde testified that the victim stated that she was sick and wished to go home. The victim then ran out of the hotel room, followed by the defendant. Ms. Hyde started to go after the victim but was persuaded by Joe that the victim would be alright and that the defendant would drive her home. Ms. Hyde stayed in the hotel room with Joe.
The victim testified that she did not remember anything between the time she left Razzy's and the time she "woke up" in Ms. Hyde's car with the defendant. The victim testified that she "woke up" in Ms. Hyde's car and became frightened because she was with a stranger (the defendant). Twice the victim jumped out of the car and fled; but the defendant caught her, beat her, and brought her back to the car. The victim testified that she tried to escape, screamed, cried, struggled, hit the defendant, *469 and informed him that she was a virgin and that she did not want to have intercourse with him. Nevertheless, the defendant beat her, removed her clothes, gagged her, and forced her to engage in sexual intercourse with him.
At approximately 6:00 a.m. on Saturday, May 10, the defendant drove the victim to her aunt's house. When they arrived, the victim ran inside and informed her aunt that she had been "raped" and that her assailant was still outside. Ms. Keaton went outside and confronted the defendant, who was sitting inside Ms. Hyde's car. Concerned for Ms. Hyde, Ms. Keaton asked the defendant where Ms. Hyde was. He replied that it was not his place to tell her, but he would show her where Ms. Hyde was if Ms. Keaton wanted to follow him. However, when Ms. Keaton went inside to use the phone, the defendant fled. Ms. Keaton immediately called the Sheriff's Department and reported the rape.
The defendant returned to the hotel room. Ms. Hyde asked him where the victim was, and he replied that he had driven her home. The defendant then persuaded Ms. Hyde to drive him home, and she reluctantly agreed. After driving the defendant to his trailer, Ms. Hyde was stopped by a policeman and informed that the victim had been "raped" and was in the hospital.
Dr. Glen Johnson performed a rape examination and physical examination of the victim on May 10, 1986. He testified that the victim had a bruise on both sides of her left wrist. His report also indicated that the victim had a burst blood vessel in her eye and that the eyelid was puffy. Dr. Johnson's pelvic examination of the victim revealed the presence of spermatozoa in her vagina and also revealed that her hymen was ruptured.
The defendant did not testify at the trial. However, the defense did not deny that the defendant had engaged in sexual intercourse with the victim. Instead, the defense theory of the case was that the victim had left the bar with the defendant, checked into a hotel room with him and, eventually, engaged in consensual sexual intercourse with him.
Defense witness Brian Ashcraft testified that, at approximately 2:00 a.m. on May 10, as Razzy's was closing, he observed the defendant and the victim leaving together. He spoke briefly with the defendant and observed that the victim, who appeared intoxicated, was hugging and kissing the defendant and had her hand on his behind. The other defense witness, Mary Ann Spring, worked at the Best Western Hotel. She testified that, between 2:30 and 3:00 a.m. on May 10, 1986, the defendant rented a room and signed the registration card in the name Leonard Kinchen. Ms. Spring observed that the victim was laughing and talking to the defendant and appeared to be having a good time. She testified that the defendant and the victim were with some other people who she could not see from her window (presumably Ms. Hyde and Joe). She testified that they were carrying on a conversation back and forth and that, at one point, she had to ask them to be quiet.
"Joe" was not located and did not testify at the trial.
ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, the defendant contends that the trial court erred in dismissing the preliminary examination.
On September 3, 1986, the defendant filed a motion for a preliminary examination which was granted and scheduled for hearing on December 10, 1986. In the interim, on October 16, the Tangipahoa Parish Grand Jury indicted the defendant. On December 10, the defendant failed to appear at the preliminary examination hearing and defense counsel refused to waive his presence. One week later, the State moved to dismiss the preliminary examination with prejudice; and the trial court granted the motion. In this assignment of error, the defendant complains that he was denied the right to a preliminary examination. He argues that the trial court could have issued an attachment for his arrest to secure his appearance at the December 10th hearing or rescheduled the preliminary examination for a later date.
LSA-C.Cr.P. art. 292 provides:

*470 The court, on request of the state or the defendant, shall immediately order a preliminary examination in felony cases unless the defendant has been indicted by a grand jury.
After the defendant has been indicted by a grand jury, the court may rescind its order for a preliminary examination.
An order for a preliminary examination in felony cases may be granted by the court at any time, either on its own motion or on request of the state or of the defendant before or after the defendant has been indicted by a grand jury.
The primary function of the preliminary examination is to insure that probable cause exists to hold the accused in custody or under bond obligation. State v. Holmes, 388 So.2d 722 (La.1980). When a criminal defendant feels he has a right to a preliminary examination, he should assert that right before trial by means of an application for supervisory writs. On appeal after conviction, he can no longer allege that he was improperly denied a preliminary examination. State v. Brent, 347 So. 2d 1112 (La.1977). Furthermore, the granting of a preliminary examination after grand jury indictment rests within the discretion of the trial court. State v. Holmes, supra. By the explicit terms of LSA-C. Cr.P. art. 292, the trial court may deny a preliminary examination once the defendant has been indicted by a grand jury. State v. Qualls, 377 So.2d 293 (La.1979).
This assignment of error is meritless.
ASSIGNMENT OF ERROR NUMBER ONE:
In this assignment of error, the defendant contends that the trial court erred in continuing the trial, over defense objection, after the jury had been selected.
On April 28, 1987, after the jury had been selected and sworn in, it was brought to the attention of the trial court that there had been no State reply to the defendant's motion for discovery. In a hearing out of the jury's presence, defense counsel cited LSA-C.Cr.P. art. 729.5 and requested that the trial court sanction the State by disallowing any evidence which should have been provided in answers to the defendant's discovery motion. Instead, the trial court decided to "continue" the trial for ten days, which would allow the State time to provide answers. Defense counsel objected to the "continuance." As this hearing progressed, it became apparent that defense counsel had probably filed the discovery motion under a different docket number, which charged the defendant with a separate offense.[1] For that reason, the State did not answer the discovery motion, since it was unaware that a discovery motion had been filed in the instant case.
LSA-C.Cr.P. art. 729.5 A provides the trial court with five different options when a party has failed to comply with discovery. The trial court may: (1) grant discovery; (2) grant a continuance; (3) order a mistrial on motion of the defendant; (4) prohibit the party from introducing into evidence the subject matter not disclosed; or (5) enter such other order, other than dismissal, as may be appropriate. Clearly, the trial court could not grant the defendant's request of sanctions because it would be unfair to prohibit the State from introducing evidence on the subject matter not disclosed when the State was not aware that a discovery motion had been filed. The trial court could not grant a mistrial because the defendant did not request one. Therefore, the trial court decided upon options (1) and (2), i.e., it granted a "continuance" during which the State could file answers to the discovery motion.
LSA-C.Cr.P. art. 708 provides:
A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.
A jury trial commences when the first prospective juror is called for examination. *471 LSA-C.Cr.P. art. 761. Therefore, while the trial court and defense counsel referred to the instant delay as a "continuance," it was actually a recess because the trial had commenced. LSA-C.Cr.P. arts. 708, 761. Nevertheless, a motion for a recess is evaluated by the same standards as a motion for a continuance. State v. Sharp, 321 So.2d 331 (La.1975). The granting of a recess, like that of a continuance, is a matter within the sound discretion of the trial court and will not be reversed on appeal in the absence of a showing of an abuse of discretion by the trial court. State v. Charles, 350 So.2d 595 (La.1977); State v. Sharp, supra. This discretion is allowed in order to insure that the proceedings are conducted with dignity and in an orderly and expeditious manner, so that justice is done. State v. Telford, 384 So.2d 347 (La.1980); State v. Humphreys, 319 So.2d 344 (La.1975).
In his brief, the defendant argues that the trial court should have ordered a mistrial pursuant to LSA-C.Cr.P. art. 775 (3) and/or (5). A mistrial was one of the five options provided to the trial court in LSA-C.Cr.P. art. 729.5 A. However, as noted above, the defendant did not request a mistrial. It is well-settled that a defendant's failure to timely move for a mistrial is a waiver of any error he may have claimed pursuant to LSA-C.Cr.P. art. 775. State v. Kohler, 434 So.2d 1110 (La.App. 1st Cir. 1983).
The defendant also argues that this recess created a possibility of jury misconduct and/or improper influencing of the jurors. Although the defendant notes that the trial court admonished the jurors before releasing them for the recess, he contends that the trial court's admonishment "was simply not complete and not strong enough to emphasize to the jurors that they were not to discuss the case in any manner, go to the scene, perform their own investigation into the facts or inquire as to the background or reputation of the victim, witnesses or the defendant." We disagree. Before the jurors were released on April 28, the trial court specifically admonished the jurors that they should not discuss the case with anyone until their final deliberations. Furthermore, before resuming the trial on May 12, the trial court questioned the jurors as follows:
First of all, have any of you discussed this matter among yourselves or with anyone else in any manner? Are there any facts or circumstances that you have learned since we were here last that you feel has prejudiced your ability to render a fair and impartial verdict in this case?
Because the jurors responded negatively[2] to these questions, we conclude that during the recess, the jurors did not act improperly and were not subjected to outside influences.
Finally, the defendant argues that recessing the instant trial placed him in double jeopardy.[3] LSA-C.Cr.P. art. 592 provides, in pertinent part: "When a defendant pleads not guilty, jeopardy begins when the first witness is sworn at the trial on the merits." However, the United States Supreme Court has clearly stated that as a matter of constitutional law jeopardy attaches in a jury trial when the jury is empaneled and sworn. See Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); State v. Bodley, 394 So.2d 584 (La.1981). In Crist v. Bretz, supra, the United States Supreme Court stated:
The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury. That interest was described in *472 Wade v. Hunter, ... [336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949)], as a defendant's "valued right to have his trial completed by a particular tribunal." It is an interest with roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice. Throughout that history there ran a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict.
Regardless of its historic origin, however, the defendant's "valued right to have his trial completed by a particular tribunal" is now within the protection of the constitutional guarantee against double jeopardy, since it is that "right" that lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn. (Citations and footnotes omitted.)
98 S.Ct. at 2161.
In the instant case, the jury had been empaneled and sworn before the trial court declared this recess. Therefore, jeopardy had clearly attached before the recess was ordered. Nevertheless, applying the rationale in Crist v. Bretz, supra, we conclude that resuming the instant trial after this lengthy recess did not place the defendant in double jeopardy, since he was eventually tried before the same jury that had been empaneled and sworn prior to the recess.
While we by no means condone the practice of granting fourteen day recesses, the misfiling of the defendant's discovery motion, and the fact that this misfiling was not revealed until after the jury had been sworn in, created a very unusual situation in this case. The trial court's decision to recess the trial until discovery could be completed clearly benefitted the defendant. Absent a showing of prejudice, the defendant should not be allowed to complain about a recess ordered for his benefit. Cf. State v. Sepulvado, 359 So.2d 137 (La. 1978); State v. Coleman, 470 So.2d 590 (La.App. 1st Cir.1985). Because the defendant has failed to demonstrate any prejudice, we find no abuse of the trial court's discretion in recessing the trial for the completion of discovery.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, the defendant contends that the evidence was insufficient to support his conviction of sexual battery. We note that, in order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post verdict judgment of acquittal. See LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673 (La.App. 1st Cir.1984), State v. Korman, supra.
LSA-R.S. 14:43.1 provides, in pertinent part:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender either compels the other person to submit by placing the person in fear of receiving bodily harm, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
* * * * * *
*473 C. Whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, for not more than ten years.
As noted above, the defendant did not testify at the trial. However, it was clear from defense counsel's opening statement and closing argument that the defense theory in the case was one of consensual sexual intercourse between the defendant and the victim. The defense did not deny that the defendant had engaged in sexual intercourse with the victim. The testimony of the defense witnesses, Mr. Ashcraft and Ms. Spring, was to the effect that the victim appeared to be enjoying herself while in the defendant's company. In his brief, the defendant concludes: "[The victim] knowingly and willingly went to a motel with the defendant and only after getting to her aunt's home in the early morning hours did she ever say anything to anyone about anything wrong being done to her. It is submitted that this is simply her way of overcoming her embarrassment of having her aunt see her coming in at such a late hour and having spent the night with a young man."
On the other hand, the victim testified that she did not consent to sexual intercourse with the defendant. The victim and Ms. Hyde speculated that they had been drugged while in Razzy's because they only had three drinks each, yet they were "intoxicated." The victim testified that she did not remember leaving the bar with the defendant or going to the hotel room. She testified that she "woke up" in Ms. Hyde's car with a stranger (the defendant). She was frightened and tried to escape twice; but the defendant caught her, beat her, and forced her to have sex with him.
The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). Furthermore, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). While it would appear from the testimony of the defense witnesses that the victim willingly accompanied the defendant from the bar to the hotel, such evidence could be explained by the fact that the victim and Ms. Hyde were incapacitated and unable to drive, as a result of being intoxicated or drugged. In any event, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, supra.
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of sexual battery. See State v. Mussall, 523 So.2d 214 (La.1988).
This assignment of error is meritless.
ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error, the defendant contends that the trial court erred in finding him to be a habitual offender, based on insufficient and inadmissible evidence.
After the defendant was convicted of the instant offense and sentenced, the State filed a multiple offender bill of information, alleging that the defendant had previously entered a guilty plea to a charge of aggravated battery in Docket No. 2767 in the 21st Judicial District Court, Livingston Parish, on June 5, 1979. At the habitual offender hearing, the State's fingerprint expert, Ettie Travis, fingerprinted the defendant in open court. She compared these fingerprints with a set of fingerprints on a document certified as being a true copy of the defendant's fingerprints from the files of the Louisiana State Police Criminal Records Office, State Exhibit 1. Ms. Travis testified that the fingerprints from State Exhibit 2 matched those from State Exhibit 1. State Exhibit 3 was a certified copy of the defendant's rap sheet. Finally, State Exhibit 4 consisted of certified copies of a bill of information, the court minutes, and a judgment of guilty, all of which *474 related to the defendant's guilty plea to aggravated battery in case no. 2767, 21st Judicial District Court, Livingston Parish, on June 5, 1979. The defendant objected to State Exhibits 1, 2, and 4; but they were introduced into evidence over his objection.
The defendant also objected that the documents introduced into evidence at the habitual offender hearing were insufficient to prove that he had been Boykinized before pleading guilty to the aggravated battery charge. The trial court also overruled this objection and found the defendant to be a second felony offender.
The defendant's argument was correct. The documents introduced at the habitual offender hearing did not indicate that the defendant was advised of and knowingly waived his privilege against self-incrimination, his right to a jury trial, and his right to confront his accusers. Absent proof the defendant was properly Boykinized, the guilty plea to aggravated battery cannot be used to enhance the defendant's sentence under the multiple offender statute. State v. Lefevre, 419 So.2d 862 (La.1982).[4]
For the foregoing reasons, the defendant's sexual battery conviction is affirmed, but his multiple offender adjudication and sentence are vacated, and the case is remanded to the district court for further proceedings consistent herewith. Accordingly, we do not address herein the defendant's third assignment of error alleging that his sentence was excessive.
CONVICTION AFFIRMED. MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED AND CASE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
NOTES
[1] At first, it was suggested that the Clerk's Office might have misfiled the discovery motion. However, a review of the transcript of this hearing seems to indicate that defense counsel actually filed the discovery motion under a different docket number.
[2] The record indicates no verbal response by the jurors to these two questions. Therefore, it is obvious that by remaining silent the jurors were indicating a negative reply.
[3] Apparently, the defendant derives this argument from LSA-C.Cr.P. art. 708, Official Revision Comment (b), which provides:

A recess that has prejudicial results because it is too long, or that is granted at a stage of the trial or under circumstances that are prejudicial, can be remedied by procedural devices. The defendant can move for a mistrial on the ground that the recess is prejudicial, or when the state makes an effort to recommence at the end of the recess, the defendant can object on the ground of double jeopardy.
[4] The State's brief contains a transcript of the proceedings in which the defendant pled guilty to aggravated battery in case number 2767, 21st Judicial District Court, Livingston Parish, on June 5, 1979. This transcript indicates that the defendant was properly Boykinized before pleading guilty to the aggravated battery charge. However, this transcript was not introduced into evidence at the habitual offender hearing. This Court has no authority to receive or review evidence not contained in the trial court record. State v. Smith, 447 So.2d 565 (La.App. 1st Cir. 1984).