808 So.2d 376 (2000)
STATE of Louisiana
v.
Jackie MARSHALL.
No. 99 KA 2884.
Court of Appeal of Louisiana, First Circuit.
November 8, 2000.
*377 Anthony G. Falterman, District Attorney, Donald D. Candell, Assistant District *378 Attorney, Gonzales, Counsel for Appellee State of Louisiana.
Kevin Patrick Monahan, Baton Rouge, Counsel for DefendantAppellantJackie Marshall.
Before: FOIL, FITZSIMMONS, and DUPLANTIER[1], JJ.
FITZSIMMONS, J.
The defendant, Jackie Marshall, was charged by bill of information with misapplication of payments by a contractor, a violation of La. R.S. 14:202. He pled not guilty. After a trial by jury, he was found guilty as charged. He subsequently was sentenced to five years at hard labor. The sentence was suspended. He was placed on supervised probation for five years, with a number of special conditions. The defendant has appealed, urging two assignments of error.

FACTS
On April 5, 1993, Raymond and Sheila Moore contracted with the defendant to build a home for them in Ascension Parish on property the Moores previously had purchased. The contracted price for the erection and completion of the home was $138,580.00. The Moores obtained a loan to pay for the construction of the house. They deposited the loan money into a construction account. During the course of construction, the Moores wrote the defendant six checks from the construction account for a total of $117,735.00. At the beginning of December 1993, although construction on the home was not complete, the defendant picked up his tools and left the Moore job site. The defendant did not return. The Moores subsequently learned that the defendant had failed to pay numerous material suppliers and subcontractors for building materials supplied for the construction of the Moore home. One supplier placed a lien on the Moore home for non-payment. Consequently, the Moores had to pay the suppliers and contractors an additional sum of more than $29,000.00 above the contracted price of $138,580.00. The Moores filed a complaint against the defendant and the defendant was arrested. Costs, extra work, and money distributions were disputed by the defendant and by the owner.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant contends that the trial court erred in denying his motion to quash. The motion was based on the State's failure to prosecute within one year of the granting of the motion for new trial, or within two years of initiation of prosecution. In his brief to this court, the defendant argues that the two motions filed by the defendant to continue trial status conferences were not preliminary pleas. Thus, they did not suspend the prescriptive period under La.Code Crim. P. art. 580. He contends that the last motion to continue the trial was on March 26, 1996. The trial was continued until July 16, 1996. He submits that the State had until March 26, 1997, to bring him to trial. However, the defendant was not tried until October 22, 1997.
A motion to quash is the proper vehicle to assert that the time limitation for the commencement of trial is untimely. La.Code Crim. P. art. 532(7). When a defendant has brought an apparently meritorious motion to quash based on prescription, *379 the State bears a heavy burden to demonstrate either an interruption or a suspension of time such that prescription will not have tolled. State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286.
La.Code Crim. P. art. 578(2) provides that no felony trial, other than for a capital offense, may be commenced after two years from the date of institution of the prosecution. When a defendant files a motion to quash or other preliminary pleas, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the State have less than one year after the ruling to commence the trial. La.Code Crim. P. art. 580. When a defendant obtains a new trial, the State must commence the second trial within one year from the date the new trial is granted, or within the period established by Article 578, whichever is longer. La.Code Crim. P. art. 582.
A trial was held. The defendant was convicted. The defendant moved for a new trial. The trial court granted the defendant's motion for new trial on December 18, 1995, after the conviction. Because the defendant's motion to quash was filed and denied on May 20, 1997, the motion was facially meritorious and the State bore the heavy burden to demonstrate either an interruption or suspension of the time limitations.
According to the evidence in the record, the defendant filed a motion for a continuance of the trial on March 21, 1996. On March 25, 1996, the trial court signed the defendant's motion, and granted the continuance. The trial was continued until July 16, 1996. On April 2, 1996, the defense filed a motion to continue the trial status conference. On April 15, 1996, a hearing was held. Neither the defendant nor defense counsel made an appearance at that hearing. The court granted the defense motion for continuance, and continued the trial status conference until June 17, 1996. On June 13, 1996, the defendant filed another motion to continue the trial status conference. At the trial status conference on June 17, 1996, neither the defendant nor defense counsel made an appearance. According to the minutes for June 17th, the court orally granted the defendant's June 13th motion, and continued the conference until July 15, 1996. The court also continued the trial until August 20, 1996. The court signed the motion on June 19, 1996. At subsequent hearings, the status conference and trial were continued on motions by either the court or the State. On May 20, 1997, the defendant filed the instant "Motion to Quash" based on the running of the time limitations.
The defendant contends that the motion to continue the status hearing was not a preliminary plea. Thus, that motion to continue did not suspend the running of the time limitations for prosecution. We disagree. It has been determined that a motion to continue filed by a defendant is a preliminary plea under La.Code Crim. P. art. 580 that suspends the running of the time limitations established by La.Code Crim. P. art. 578. State v. Simpson, 506 So.2d 837, 838 (La.App. 1st Cir.), writ denied, 512 So.2d 433 (La.1987). Additionally, a preliminary plea, as contemplated by La.Code Crim. P. art. 580, is any plea filed after the prosecution is instituted, and before the trial, which causes the trial to be delayed. State v. Simpson, 506 So.2d at 838 (citing State v. Elfert, 247 La. 1047, 175 So.2d 826 (1965)). Therefore, a "Motion for a Continuance of a Trial Status Conference" is a plea, filed after the institution of prosecution and before the trial, which causes the trial to be delayed.
In the instant case, each time the trial status conference was continued, the trial *380 was also continued. At the hearing on the motion to quash, Stephen Sheets, the assistant district attorney, testified that under normal court procedure for the 23rd Judicial District Court, when a status conference was continued, the trial also was continued. The status conference normally was held one month before trial, unless there were extenuating circumstances.
Considering the above, we conclude that the last defense motion for continuance of the trial status conference, orally granted on June 17, 1996, was a preliminary plea sufficient under La.Code Crim. P. art. 580. The plea suspended the time limitations as set forth in La.Code Crim. P. art. 582. Therefore, because Article 580 provides that in no case shall the State have less than one year after the ruling to commence trial, the State had until at least June 17, 1997, before the tolling of the time limitations. Thus, the trial court properly denied the defendant's May 20, 1997 "Motion to Quash." This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, the defendant contends that the jury erred in concluding that the State proved beyond a reasonable doubt all elements of La. R.S. 14:202. In his brief to this court, the defendant argues that the State failed to establish that he knowingly misapplied any of the money received on the account of the Moore home construction project. He claims that this was a contractual dispute between a builder and homeowner: it should have been handled in a civil forum. The defendant contends that this case is a cost overrun dispute and that the State failed to show that he misapplied any of the money received as construction draws. He claims that the dispute is "replete with ambiguities, imprecision, cost overruns[,] and communications lapses," but there was not a scintilla of evidence presented by the State to support the scienter requirement of La. R.S. 14:202.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.Code Crim. P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 seeks an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988). This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La. App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The testimony of the victim alone is sufficient to prove the elements of the offense. However, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La. App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
*381 Specific "intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by the defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984).
La. R.S. 14:202 provides, in pertinent part:
A. No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement, including contracts and mortgages for interim financing, shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.
Thus, the elements of the crime are: (1) the existence of a contract to construct, erect, or repair a building, structure, or other improvement; (2) the receipt of money on the contract; and (3) a knowing failure to apply money received as necessary to settle claims for material and labor due under the contract.
Standing alone, evidence that the contractor received money, but failed to pay a number of suppliers, is not sufficient to support a conviction. The State must prove a knowing misapplication of the funds received. Merely inadequate bookkeeping, negligent supervision, poor cost calculation skills, or disputes over charges and cost overruns are not criminal acts. Negligence and inefficiencies are more properly the subject of a civil suit. See State v. Deselle, 509 So.2d 809, 811 (La.App. 1st Cir.1987). "As long as the contractor applies all the money he receives from the owner to the labor and material bills he incurs on the owner's job, he is not criminally responsible under the statute, even if the amount received is insufficient to discharge all the bills." State v. Weems, 595 So.2d 358, 360 (La. App. 2d Cir.1992).
The defendant started construction on the Moores' house on May 14, 1993. From May 27, 1993, until October 25, 1993, six checks were written to the defendant from the victims' construction account for a total of $117,725.00. Mr. Moore explained that there was a disbursement schedule. The defendant was supposed to complete a certain amount of work on the house and would then receive a certain percentage of the construction loan. The defendant's last day working on Moore's house was December 4, 1993. According to Mr. Moore, the defendant picked up his tools and left the job. The defendant told Mr. Moore that defendant did not have another job, but he did not return Mr. Moore's telephone calls. Mr. Moore indicated that he tried to work with the defendant before having him arrested.
According to Mr. Moore, he was contacted by Sorrento Lumber Company regarding a bill. Based on the conversation he had with them and invoices given to him, Mr. Moore issued Sorrento Lumber Company a check from the construction loan account for $19,795.41 for supplies that were bought and used by the defendant in the construction of Mr. Moore's home. The supplies were not paid for by the defendant. According to Mr. Moore, his payment to Sorrento Lumber left a balance of approximately $1000.00 in the construction account. Mr. Moore told the defendant about the Sorrento Lumber bill. The defendant replied that he was aware of the bill, that he intended to pay the bill, *382 but he was going to pay it late because he was upset with Sorrento Lumber. Mr. Moore subsequently paid several suppliers and subcontractors that had not been paid by defendant. When the construction account was depleted, Mr. Moore used his personal funds.
Receipts from one of the suppliers, Purpera and Sons, dated from September 28, 1993 to November 26, 1993, were for materials sold to the defendant. The majority of these invoices show the items as sold to the defendant and shipped to the "Moore Job." Yet, these invoices reference the address of "Lot 15 & 16 Woodhaven-Prairieville, LA." During his testimony, Mr. Moore indicated that the home the defendant was building for his sister was on Wood Haven in Prairieville, Louisiana.[2]
According to Mr. Moore, he paid a total of $29,501.26 out of his personal checking account. Thus, the total cost for his home was $167,021.67. Additionally, Mr. Moore indicated that after he paid this additional money, the house was still not completed. Mr. Moore acknowledged that he contacted some of the suppliers and subcontractors to determine how much money was owed to them. Mr. Moore took this action without a demand for payment being made upon him. One supplier did place a lien on the property.
Mr. Moore admitted that the defendant did extra work during the construction of his home. That work added to the cost of the home. He further acknowledged that according to his construction contract with the defendant, he was to pay him within five days for the costs of any "extras." Mr. Moore agreed that the defendant paid for the extras, but did not make Mr. Moore pay him within five days. However, Mr. Moore asserted that he did not pay for the extras within five days because the defendant already owed him $3,200.00 for the appliance and lighting allowances. As for the extra work done on his home, Mr. Moore denied owing the defendant over $23,000.00.
Mr. Moore denied running the defendant off the job, but stated that the defendant did not return to the job. He did not demand that the defendant stay off the property. The defendant did not attempt to return to his house with workers. Mr. Moore also testified that he did not think his house was getting as much attention as the defendant's sister's house.
Jacqueline Pearce[3] assisted the defendant in the operation of his business. As bookkeeper and secretary, she was familiar with the defendant's ledgers and records. Deposits were made in the company bank account. The checks written for job expenses were listed on separate job ledgers. Ms. Pearce admitted that the ledger for the Moore construction job, and corresponding checks, showed that a number of workers were paid with Moore funds for work on another site, the Blanchard construction job. Some of these checks were signed by Ms. Pearce, some by defendant. The Moore ledger also reflected payments by check to the defendant's ex-wife, who lived in Illinois, and two attorneys from Illinois. Those checks were signed by defendant. Also listed on the Moore job ledger were advance payments made to pay off employee bills. Ms. Pearce testified *383 that the employees then worked for free, until the advances were earned. Again, some checks were signed by Ms. Pearce, some by defendant.
According to Ms. Pearce, $20,000.00 of the defendant's personal funds were deposited in the business account. These funds were used to begin the Moore job. Ms. Pearce claimed that Sorrento Lumber failed to credit the Moore account with $10,000.00 that the defendant had paid them. She testified that the money was mistakenly applied to the Blanchard account. Ms. Pearce claimed that the total amount spent on extras for the Moore house was more than $21,000.00. She testified that she did not knowingly fail to pay the subcontractors. She stated that, "If we had the money, we paid it."
The defendant did not testify at trial. The guilty verdict returned in this case indicates that, after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victim and the portion of Ms. Pearce's testimony that supported the victim's claims. This court will not assess the credibility of the witnesses or reweigh the evidence.
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls. The defendant then is guilty, unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).
After reviewing the record, we are convinced that the testimonial and documentary evidence supported the jury's determination. We reject the defendant's argument, and find that the requisite specific intent can be inferred from the circumstances of the crime. We believe that a rational trier of fact, viewing all of the evidence, both direct and circumstantial, as favorable to the prosecution as any rational fact finder can, could have concluded beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty. The jury could have reasonably concluded that the State proved, beyond a reasonable doubt, that defendant knowingly misapplied funds from the Moore job, and failed "to apply the money received as necessary to settle claims...." La. R.S. 14:202. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Honorable Thomas R. Duplantier is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] According to Mr. Moore, the defendant started construction on the defendant's sister's home the day after he started Mr. Moore's home. Mr. Moore claimed he frequently had to find the defendant at his sister's home because he was there more than he was at the Moore construction site.
[3] Although the bookkeeper signed the checks Pearce, the spelling of Pierce was used in the transcript.