445 So.2d 456 (1984)
STATE of Louisiana
v.
Stevenson BROWN.
No. 83-KA-503.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1984.
*457 Joseph L. Montgomery, Indigent Defender Bd., Gretna, for defendant-appellant.
John M. Mamoulides, Dist. Atty., William C. Credo, III, Asst. Dist. Atty., Twenty-Fourth Judicial Dist. Court, Parish of Jefferson, Gretna, for plaintiff-appellee.
Before BOUTALL, CURRAULT and DUFRESNE, JJ.
*458 DUFRESNE, Judge.
Defendant, Stevenson Brown, was convicted by a jury on two counts of simple arson (R.S. 14:52) and sentenced on each count to serve three years at hard labor. These sentences were to be served consecutively.
From this verdict and sentence, the defendant now appeals and has assigned the following two errors for our review:[1]
1. The trial judge committed reversible error, when he failed to suppress defendant's confession, which confession was not voluntarily obtained, as required by C.Cr.P. art. 703(D).
2. The sentence of the trial judge was excessive, in violation of Article I, Section 20 of the Louisiana Constitution.

FACTS
Count 1Lincoln Middle School
At approximately 11:00 P.M. on the evening of March 9, 1982, members of the Marrero Ragusa Volunteer Fire Department were called to the scene of a fire at the Lincoln Middle School in Marrero, Louisiana.
As the blaze was being extinguished, the principal of the school checked the rest of the grounds and found several windows broken in other buildings. Because of the apparent vandalism, an arson investigation was initiated.
Steven Hux, testifying as an expert in the field of fire investigation, concluded that "this was a deliberately set fire with three distinct points of origin."
Damage to the school structure and supplies was estimated at $135,000.00.
Count 2Residence of Patricia Jackson
On December 7, 1981, the home of Mrs. Patricia Jackson located at 1725 Mansfield Street in Marrero, Louisiana was partially destroyed by a fire which started in the kitchen area of the house. Reconstruction estimates placed the damage at approximately $60,000.00.
After the fire was extinguished by members of the Marrero Ragusa Fire Department, an arson investigator from the Jefferson Parish Fire Department was summoned to the scene. Dan Horaist, qualified as an expert at trial, testified that he could locate no natural causes for the fire. Based upon his examination of the residence, Horaist concluded that the fire had been intentionally set.
In connection with the criminal investigation of the arson at the Jackson residence and the Lincoln Middle School, Detective George Honses of the Jefferson Parish Sheriff's Office interviewed Randy Blanchard and Ray Arceneaux of the Marrero Ragusa Volunteer Fire Department. Both stated to Honses that they had seen Stevenson Brown (a/k/a J.J.) at the location by both fires.
After consulting with the firemen, Detective Honses went to the residence of Stevenson Brown. Upon learning that the defendant was not home, Honses went to meet the defendant at his place of employment. Nearing the intersection of Ames Boulevard and the Westbank Expressway he saw the defendant crossing the street. He stopped his car, got out, identified himself and requested that the defendant accompany him to the detective bureau for "questioning concerning some fires which had occurred." The defendant agreed. Upon reaching the Detective Bureau, the defendant was advised of his rights, signed a "Rights of Arrestee" form and gave a statement assuming responsibility for both fires.
*459 Assignment of Error No. 1
As stated above, the defendant specifies as error the trial court's refusal to suppress the defendant's confession, which was not voluntarily obtained.
It is the defendant's argument that the confession was obtained as a direct result of an arrest without probable cause and should have been suppressed.
Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) requires the state upon the defendant's challenge to the admissibility of the confession, to establish either that the arrest was lawful or if the arrest was unlawful, that the connection between the arrest and the confession was so attenuated that the confession could not possibly be considered the fruit of the illegal arrest.
In considering whether the confession is the exploitation of an illegal arrest, the following factors are to be considered: the temporal proximity of the arrest and confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. Brown v. Illinois, supra. See also State v. Giovanni, 375 So.2d 1360 (La.1979), and State v. Scott, 355 So.2d 231 (La.1978).
It is clearly established by the record, although not conceded by the state, that insufficient probable cause existed to arrest the defendant for arson. Honses testified that the only evidence linking Stevenson Brown to the fires under investigation were the statements of firefighters placing him at several arson scenes. Additionally, the temporal proximity of the defendant's statement to this arrival at the Detective Bureau, as well as the absence of any intervening circumstances, suggest that his detention was exploited by the officer.
However, in order to provide a ground for the suppression of a statement, the detention itself must constitute an arrest without probable cause, resulting in an illegal seizure of the person in violation of the Fourth Amendment.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a person is "seized" within the purview of the Fourth Amendment "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry, supra, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16.
In State v. Giovanni, 375 So.2d 1360, 1363 (La.1979) the Louisiana Supreme Court held:
Under the settled jurisprudence of this state, an arrest is made when one person is taken custody by another and there is actual restraint of that person. See La. Code of Criminal Procedure Art. 201. In State v. Sherer, 354 So.2d 1038, 1042 (La.1978) this court observed that "it is the circumstances indicating intent to effect an extended restraint on the liberty of the accused, rather than the precise timing of an officer's statements: `You are under arrest,' that are determinative of when an arrest is actually made."
The Louisiana courts have adopted a "totality of the circumstances" approach to determine when a person has been arrested. See State v. Thibodeaux, 414 So.2d 366 (La.1982). The federal courts have evaluated the circumstances in the light of what the "reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." Coates v. United States, 134 U.S.App.D.C. 97, 99, 413 F.2d 371, 373 (1969). See also United States v. Beck, 598 F.2d 497 (9th Cir.1979).
This standard recognizes that "the dimensions of an encounter between the individual and officer may be sufficiently constrictive to cause the average person, [footnote omitted] innocent of crime, to reasonably think that he was being arrested." United States v. Beck, supra at 500. See also United States v. Scheiblauer, 472 F.2d 297 (9th Cir.1973).
The Supreme Court in United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) set forth examples of circumstances which would indicate to a reasonable person that he was not free to leave.

*460 [C]ircumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See Terry v. Ohio, supra, 392 U.S., at 19, n. 16, 88 S.Ct., at 1879, n. 16; Dunaway v. New York, 442 U.S. 200, 207, and n. 6, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824; 3 W. LaFave, Search and Seizure 53-55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.
The testimony introduced at the suppression hearing was conflicting on the issue of the subjective intent of the officer. He testified on direct examination as follows: "I stopped him, identified myself, [and] asked him if he would come to the Detective Bureau. He agreed, and I took him." Although in response to the defense question; "If he had not come with you, would you have taken him?" Honses responded "No Sir. I would have got[ten] a warrant."
Under additional interrogation, Detective Honses specifically indicated that the defendant was not under arrest until after his statement had been received and completed.
The trial judge determined that Honses' explanation was plausible and apparently concluded that the defendant was not under arrest at the time the statement was given. Because of the lack of any evidence indicating coercion on the part of the officer (see United States v. Mendenhall, supra) the judgment of the trial court can be supported by the record.
Brown was approached in a public place by one officer. Although the record does not reflect that the defendant was told he did not have to accompany the officer, Honses testified that his request to Brown to come to the detective bureau was responded to voluntarily. This testimony was uncontradicted.
In State v. Liner, 397 So.2d 506 (La. 1981) the defendant had cooperated with authorities in the investigation of a neighbor's murder. Following the identification of a bloody fingerprint on the murder scene as his, three police officers went to his residence and requested that he accompany them to the courthouse for further questioning. In finding the confession made later that evening, not to be the prouct of an illegal arrest, the court held:
A holding in the instant case that the defendant's Fourth Amendment rights had been violated would create a situation under which police would be unable to conduct face-to-face interviews during their investigation of a crime for fear that an interviewee at a later date might become a defendant.
State v. Liner, supra at 514.
The second portion of the assignment is addressed to the mental capacity of the defendant to make a knowing and intelligent waiver of his Miranda rights.
"While a claim of mental illness normally requires a defendant to establish by a preponderance of the evidence that he has a mental illness, where the voluntariness of his confession is at issue, the state, having the burden of establishing that the confession was voluntary, still retains that burden. [citation omitted]" State v. Trudell, 350 So.2d 658, 661 (La.1977).
At the hearing on the defendant's application for a sanity commission, Ms. Dorothy Scott testified that Stevenson Brown, her foster son, attended a school for the handicapped because "he couldn't learn". According to her testimony, the defendant was mentally disabled, unable to write, count change, or even understand the value of money. Because of the disability, she received S.S.I. (Social Security Income benefits) for his support.
Both Dr. Arneson and Dr. Schraberg testifying at the sanity hearing agreed that the defendant's I.Q. was 54 and accordingly, he suffered from a moderate degree of *461 retardation. Because of the disability, he would not be a functional reader and his writing would be restricted similarily. However, both concurred that "if his rights were carefully explained to him he would be able to make a knowing and intelligent waiver of those rights." Additionally, Dr. Judith Feldman, Chief Pyschologist at West Jefferson Mental Health Center, East Jefferson Mental Health Center, and at the Delgado Evaluation Center for Vocational Rehab., appearing on behalf of the defense at the suppression hearing corroborated that the defendant was in the mild range retardation (in the imbecile range) but also after viewing the "Rights of Arrestee or Suspect" form, responded that the defendant has the mental capacity to understand the form if it were read to him slowly.
Immediately prior to interviewing Brown, Detective Honses testified that he read the defendant his Miranda rights from a form entitled "Rights of Arrestee or Suspects". In explanation of how the interrogation was conducted, Honses stated:
This is a rights of arrestee form that we review with the arrested subject. We go over it. I read it to him. After each of the questions that I read to him, he initialed it, printed his initials. At the bottom he read it and in two different places he printed his name.
This "rights form" is contained in the record and contains both the initials and signatures of the defendant in the areas designated by the detective.
Although Honses conceded that the defendant appeared slow, in response to the prosecutor's question: "Did Mr. Brown appear to you to have any difficulty understanding what you were telling him?" he stated "No, sir, not really. Not that I could detect."
The court in determining the statement admissible, stated; "... I believe considering all the facts that I've heard, I believe the confession was understood by the defendant and was voluntarily given and that none of the constitutional rights of the defendant were violated; therefore, I'm going to deny the motion to suppress."
When the issue in a case on appeal is whether a defendant's lack of intellectual ability precluded him from effectively understanding the essential nature of his constitutional rights, much weight is accorded the trial court's assessment. State v. Coleman, 395 So.2d 704 (La. 1981); State v. Trudell, 350 So.2d 658 (La.1977); State v. White, 329 So.2d 738 (La.1976). The conclusion of the trial court as to the admissibility of a confession should not be overturned unless it appears that the conclusion is wholly unsupported by the evidence. State v. Dison, 396 So.2d 1254 (La.1981); State v. Jackson, 381 So.2d 485 (La.1980); State v. Manning, 380 So.2d 46 (La.1980).

State v. Brogdon, 426 So.2d 158, 167 (La.1983).
A review of the record indicates that the evidence in this case supports the determination of the trial court that the defendant's confession was freely and voluntarily given. Despite the defendant's low intellectual level, there was an affirmative showing that the statement was obtained in compliance with LSA-R.S. 15:451.
"Moderate mental retardation or low intelligence do not of themselves vitiate a free and voluntary confession. The critical factor in such cases is whether or not the defendant was able to understand the rights which were explained to him. State v. Anderson, 379 So.2d 735 (La.1980); State v. Collins, 370 So.2d 533 (La.1979)." State v. Brogdon, supra at 167.
The defendant did not testify at the suppression hearing on October 13, 1982, but did testify at the time of trial as the state, out of the presence of the jury, was laying the predicate for the statement. At this time, several defenses to the confession were offered by Brown. This procedure of attacking the admissibility of an inculpatory statement is no longer authorized by C.Cr.P. Art. 703(F) which now provides in pertinent part;

*462 A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.
Rather, the defendant's testimony should have been introduced at the suppression hearing. Following an adverse ruling on the motion, the defendant may seek supervisory relief or address the matter on appeal. At trial, the introduction of evidence concerning the circumstances surrounding the taking of the statement is only to enable the jury to determine the weight to be given the statement. See LSA-C.Cr.P. Art. 703(G). The predicate should not provide another opportunity to attack the admissibility of the statement.
However, in an abundance of caution, his testimony shall be considered.
The defendant denied giving a statement to the detective admitting guilt to the several fires under investigation. However, he did acknowledge that he answered some questions for the detective, but he only did so because "he grabbed me on the shoulder and he grabbed me by the next [sic]." Further, he acknowledged that it was his signature on both the "Rights" form and the statement, but he claimed he never saw the original before. He later said, "I didn't sign it like that. I signed that here ... at the jail."
The judge again declared the statement admissible, finding the testimony of Officer Honses to be a more accurate depiction of the circumstances surrounding the confession. His assessment of the credibility of the witnesses is entitled to great weight on appeal. State v. Loyd, 425 So.2d 710 (La.1982).
An additional fact was elicited from Detective Honses at this evidentiary hearing that had not been presented at the motion hearing, namely that Honses did not reiterate the Miranda rights after the initial recitation from the "Rights of Arrestee or Suspect" form. Jurisprudence has not mandated such multiple warnings. In State v. Harvill, 403 So.2d 706, 709 (La. 1981) the court observed, "[a] requirement that the Miranda warnings be repeated before each separate interrogation period would quickly degenerate into a formalistic ritual."
The third portion of the assignment concerns the defendant's claim of his assertion of his right to counsel.
Initially, this ground was not urged by the Motion to Suppress filed by counsel or argued at the suppression hearing.
LSA-C.Cr.P. Art. 703(F) provides in pertinent part, "[f]ailure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress." In the present case, trial had begun. See LSA-C.Cr.P. Art. 761. (See previous argument.)
However, as previously, out of an abundance of caution, we will consider this issue and the defendant's testimony.
The defendant indicated that he told the officer he wanted a lawyer; however, Detective Honses testified that at no time did the defendant ask for an attorney or request the interview to be stopped.
The trial judge, in determining the statement to be admissible, ruled:
"I do believe it's a question of his credibility, and I do believe the statement of Detective Honses.
Therefore, it is the conclusion of the court that this statement was given freely, voluntarily, not under the influence of any fear, duress, intimidation, menaces, threats, inducements or promises, and that the statement should be admitted into the trial of the case."
In State v. Loyd, supra at 715, the court held:
When we review a ruling of the trial court based upon a finding of fact, great weight is placed upon the determination of the court below because the trial *463 judge had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. [citations omitted] These findings will not be disturbed unless they are not supported by the evidence. [citations omitted]
The record provides ample support of the trial judge's factual findings and accordingly, we will not disturb his ruling here on appeal.
This assignment of error in all of its facets has no merit.
Assignment of Error No. 2
The sentence of the trial judge was excessive, in violation of Article I, Section 20 of the Louisiana Constitution.
This assignment of error, although appearing in the brief filed by defense counsel, does not appear in the Assignments of Error and Designation of Record, filed in this proceeding. Although State v. Spears, 350 So.2d 603 (La.1977) holds that this matter is not properly before the court for review, we will consider it here.
The penalty provision for LSA-R.S. 14:52 provides in pertinent part; "[w]hoever commits the crime of simple arson, where the damage done amounts to five hundred dollars or more, shall be fined not more than fifteen thousand dollars, and imprisoned at hard labor for not less than two years nor more than fifteen years."
The trial judge imposed a sentence of three years at hard labor for each count of the indictment. These sentences were ordered served consecutively. Accordingly, the sentence chosen by the court was nearer the statutory minimum than maximum. The judge additionally, carefully articulated the reasons for sentencing in compliance with 894.1, noting both aggravating and mitigating circumstances.
Considering the record of the proceedings and the statements of the trial court, the sentence imposed is not severe or an abuse of the trial courts considerable sentencing discretion.
For the above and foregoing reasons, the sentence imposed by the trial court is maintained. Assignment of Error No. 2 has no merit.
Defendant, Stevenson Brown's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In his Assignment of Errors and Designation of Record, defense counsel presented four errors. However, in his brief, he addressed only one of these (Assignment No. 1) and presented another error (Assignment of Error No. 2).

Assignments of Error not briefed or argued may be deemed abandoned. (See Rule 2-12.4, Uniform Rules of the Court of Appeal, and State v. Triplett, 434 So.2d 1270 (La.App. 1st Circuit 1983)). Accordingly, only the two assignments of error briefed by defense counsel will be considered here on appeal.