BOUTALL, Judge.
Randy Kaysen was indicted under R.S. 14:30.1, second degree murder, for the killing of a convenience store employee. Following trial, the jury returned a verdict of guilty as charged, and defendant was subsequently sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. This appeal followed.
Appellant raises two assignments of error: first that the court erred in denying the motion to suppress and second that the court erred in denying the motion for mistrial.
FACTS
In the early morning hours of October 10, 1982, the Jefferson Parish Sheriffs Office received an anonymous telephone call advising them that the clerk of the 7-Elev-en Store at 3050 Barataría Boulevard was lying on the floor in what appeared to be blood and that the cash register was open. Police arrived shortly thereafter and found the victim, Lena Kersey, dead. She had been hit three times in the head with a tire tool, which was found lying under her left arm, and stabbed seven times.
A subsequent cash audit of the cash registers revealed that somewhat less than $100 had been taken.
As the homicide investigation was being conducted, about a mile and a half away, Randy Kaysen, dressed only in jeans, entered the Blue Lagoon Lounge and approached the table occupied by Lionel Beebe, Rhonda Trosclair and Joel Heaney. He looked frightened and upset and asked Beebe to accompany him outside. As the two left the bar, Heaney decided to follow.
When Beebe and Kaysen emerged from the bar, with Heaney a short distance behind, Kaysen began crying and shaking, repeating, “I messed up my life. I messed up.” When pressed for an explanation Kaysen said he had killed a woman. Believing that Kaysen had been involved in a traffic accident, Heaney asked if Kaysen had hit anybody. Trosclair, who had followed the trio outside, stated that in response to this question, “Randy didn’t say no, he just kept repeating I killed her I killed her.” Heaney asked Kaysen if he had killed his girl friend to which Kaysen answered “No the lady at 7-Eleven.” When asked why, Kaysen stated that he didn’t remember. Heaney also asked if Kaysen had taken anything from the 7-Eleven. Kaysen thought he had gotten about $20. The group remained at the lounge for about five more minutes, then left with Trosclair driving Kaysen home.
On the afternoon following the homicide, Beebe told his sister Belinda what Kaysen had told him that morning at the Blue Lagoon Lounge. The next day, Belinda informed the police and the police then spoke to her brother, Heaney, and Tros-clair. Acting upon the information received, the police arrested the defendant. While in custody, the defendant gave two statements, one oral and one taped.
ASSIGNMENT OF ERROR NO. I
Appellant first contends the court erred in denying the motion to suppress the statements made the night of his arrest. Counsel for appellant maintains that the subnormal mental ability of the defendant precluded a knowing, intelligent, and voluntary waiver of Miranda rights.
Pursuant to R.S. 15:451, before the State may introduce a confession into evidence, it must prove beyond a reasonable doubt that the statement was “free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.” Diminished mental or intellectual capacity does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. The critical factor is whether the defendant was able to understand the rights explained to him. State v. Brown, 445 So.2d 456 (La.App. 5th Cir.1984) and cases cited therein; State v. Benoit, 440 So.2d 129 (La.1983).
*795 The factors elicited at the suppression hearing and at trial established that the defendant was 19 years old at the time of his arrest. Although he had completed the eighth grade, he had been classified as a slow learner and placed in special education classes. It was not disputed the defendant had difficulty reading or that his intelligence quotient ranged between moderately retarded and dull-normal.
In order to sustain its burden of proof of the issue of voluntariness, the State offered the testimony of Detectives Marco Nuzzolillo and James Trapani, who obtained statements from the defendant. Both testified that upon learning that the defendant had difficulty reading, they took particular pains to ascertain that he understood the Miranda warnings.
Nuzzolillo, who was the first to interview defendant after his arrest, acknowledged that Kaysen was upset and crying during their conversation but stated also that defendant listened attentively to an articulation of the Miranda rights and indicated that he understood his rights and wished to waive them. Kaysen himself testified the detectives went over the rights with him very slowly, and Nuzzolillo had him initial each one on the Rights of Arrestee or Suspect form only after Nuzzolillo was sure that he understood them.
After Nuzzolillo spoke briefly with Kay-sen, he left the office and told Trapani that Kaysen had given an oral statement and wished to give a formal statement. Nuzzo-lillo advised Trapani of Kaysen’s limited reading ability. Trapani then spoke with Kaysen, orally warning him of his Miranda rights. A second Rights of Arrestee or Suspects form, identical to the first, was initialed and signed, indicating that Kaysen wished to waive the enunciated rights and make a statement. Prior to questioning Kaysen, Trapani again articulated the Miranda rights and Kaysen acknowledged understanding. The taped statement of Kaysen contains this conversation.
The trial court ruled the statements admissible. The court based its decision not only on the testimony of the detectives considered the testimony of Dr. David Shraberg, the prison psychiatrist, who stated it was his professional opinion Kaysen understood “the gist” of the Miranda warnings and was sufficiently “street wise” to make an intelligent waiver of rights. This conclusion was based upon eight or nine interviews with the defendant, all prior to the hearing.
The trial judge questioned the defendant at length during the hearing. His reasons for denial of the motion, which fill over three pages of the transcript, convinces us defendant made a knowing and intelligent waiver of his rights. As the reviewing court, we may only disturb the trial court’s determination of admissibility if that determination is wholly unsupported by the evidence. State v. Brogdon, 426 So.2d 158 (La.1983). We have read the record before us and find the evidence herein fully supports the trial judge’s determination. This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 2
Appellant next contends the trial court erred in denying a joint motion for mistrial. There are two grounds for this assignment, one substantive and one procedural. Substantively, appellant contends he was prejudiced by being forced to proceed with trial despite the fact he had been prescribed and administered a certain drug while in prison, and prior to trial. Procedurally, appellant contends under La.C.Cr.P. art. 775 the trial judge was required to grant a mistrial following the State’s concurrence in the defense’s motion. These arguments lack merit.
Shortly after trial began, defense counsel moved for a mistrial following his discovery that defendant had been administered a drug, Elavil. Defense counsel stated he was unsure what affect the Elavil had on the defendant and he felt he had the right to go to trial with him in a non-drugged state. Pursuant to this motion, the trial judge conducted a hearing outside the hearing of the jury.
*796 Dr. Shraberg, the prison psychiatrist, testified that Elavil is an anti-depressant, and that defendant had been placed on the drug to help relieve his insomnia and depression. It was the doctor’s professional opinion that Elavil actually enhanced the ability of a defendant to assist counsel and aid in his own defense at trial. He concluded his opinion by stating, based upon his examinations of the defendant, that defendant understood the proceedings against him, was aware of the charges, understood the seriousness of the crime, and understood available defenses.
After his own thorough examination, the trial judge found the defendant competent to proceed with trial: that the defendant was “reasonably alert, and that he is able to recall and relate certain facts” as to time, place and situation, that while the defendant “does not understand legal terminology ... if it is put in very simple language ... the defendant is capable of understanding ... and should be able to assist counsel ... and understand the nature of the charge and appreciate the seriousness ... his legal rights ... possible verdicts ... consequences of conviction....”
It is well settled that the determination of the trial judge as to the competency of the defendant to stand trial is entitled to great weight on appeal, and that such a determination will not be overturned absent an abuse of discretion. State v. Brogdon, supra. We find no abuse of discretion in the trial judge’s determination that defendant was competent to stand trial. We find that if anything, the Elavil actually helped the defendant to understand the proceedings and to assist counsel in his own defense. We agree with the trial judge’s lengthy and very thorough reasons for denial of the motion. Accordingly, this portion of the assignment lacks merit.
Finally, appellant raises the question whether the trial court erred in failing to instantaneously grant a mistrial when the State concurred in the defense’s motion for mistrial. We find no error for the reasons described below.
Procedurally, this matter came about as follows. As previously stated, when defense counsel moved for a new trial, the trial court conducted a hearing outside the presence of the jury. Shortly after the first witness completed his testimony, the State announced it would join in the motion “if the court so agrees ... to avoid the appearance of impropriety ...” The State made it clear that it concurred in the motion only to avoid publicity prejudicial to the State. At this point, instead of ruling on the merits of the State’s motion, the trial judge continued the hearing. During the course of the hearing, the prosecuting attorney asked for a recess to talk to his supervisor. Following that recess, the attorney informed the court that the State was withdrawing its motion, which the court accepted.
Under these circumstances, we cannot say the trial court erred. Contrary to the defendant’s argument, it is clear that the State never completely joined in the defense’s motion for a mistrial. Rather, the State explicitly said it would join in the motion if “the court so agrees.” Accordingly, we cannot find fault with the trial judge’s decision to complete the evidentiary hearing instead of granting a mistrial. Moreover, we find that defendant suffered no harm or prejudice by the court’s action. If anything, the trial judge’s actions convinces us he went to the greatest lengths possible to insure that the defendant received a fair trial.
Accordingly, for the reasons set forth above, we find this portion of Assignment No. 2 lacks merit.
The conviction and sentence are affirmed.
AFFIRMED.