817 So.2d 174 (2002)
STATE of Louisiana
v.
Joe JOSEPH.
No. 01-KA-1211.
Court of Appeal of Louisiana, Fifth Circuit.
April 10, 2002.
Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Plaintiff/Appellee.
Gwendolyn Kay Brown, Louisiana Appellate Project, Baton Rouge, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER E. ROTHSCHILD.
DALEY, Judge.
Defendant Joe Joseph appeals a jury verdict finding him guilty of manslaughter. After thorough review of the record, we affirm.
On October 26, 1999, the defendant was charged by indictment with second degree murder, in violation of LSA-R.S. 14:30.1, *175 for the death of Andrea Washington. The defendant was arraigned on November 4, 1999, and he entered a plea of not guilty and not guilty by reason of insanity. The defendant filed a Motion to Suppress his confession, which was denied by the trial court on June 1, 2000. A two-day jury trial began on March 20, 2001, and the jury found the defendant guilty of the responsive verdict of manslaughter.
On May 9, 2001, the defendant was sentenced to thirty years at hard labor. At the sentencing, the defendant made an oral Motion for Appeal. The trial court granted the defendant's Motion for Appeal on May 15, 2001.

FACTS
Lieutenant Harry Troxlair, a crime scene investigator for the St. John Sheriffs Office, testified that he received a call at approximately 11:38 p.m. on September 18, 1999, regarding a shooting. Upon arrival, Troxlair observed a black female, later identified as Andrea Washington, lying face down in a grassy area on Fig Street in Garyville.
Dr. Fraser Mackenzie, an expert in the field of forensic pathology, performed the autopsy of the victim. He testified that Andrea Washington died of a gunshot wound to the chest with a perforating wound to the aorta. Dr. Mackenzie also testified that he did not find any gunpowder burns on the body or clothing of the victim. He explained that when a weapon is discharged at close range, usually less than two feet, some of the powders from the gun are deposited on the body or clothing. On cross-examination, Dr. Mackenzie stated that, in his opinion, the gun was fired at Ms. Washington from more than two feet away.
Lieutenant Clarence Gray of the Felony Street Crimes Unit for St. John Sheriff's Office also was called out to the scene of the shooting. Gray testified that, through his investigation at the scene, the defendant, Joe Joseph, became a suspect, and he began looking for him and his truck. Lt. Gray stated that he found the defendant's truck concealed in a high grass area near an abandoned residence. Gray testified that the registration in the truck indicated that Joe Joseph was the owner.
Captain C.J. Destor of the St. John Sheriff's Office also testified at trial. He stated that, on September 20, 1999, two days after the shooting, the defendant walked into the police station and turned himself in at 8:00 a.m. Captain Destor took the defendant into the interview room, advised him of his constitutional rights, and executed a Waiver of Rights form. Capt, Destor testified that the defendant walked into the police station holding a brown paper bag containing three sandwiches, a bar of soap, and his toothbrush. He described the defendant's clothes as disoriented and soiled. Captain Destor testified that the defendant told him he had been sleeping in a cane field since the murder occurred.
According to Captain Destor, the defendant stated to him that he and the victim argued on the night of September 18, 1999 because she wanted money from him to purchase crack cocaine. The defendant explained that he had given money to her in the past, and that an argument ensued because he refused to give her some money that night. The defendant stated that the argument carried out from the trailer into the street. The defendant then told Captain Destor that Washington reached into her bra and produced a revolver. A struggle began, and, according to the defendant, the gun went off while in his hand. He then ran down the street, and claimed that the gun had fallen out of his back pocket. Captain Destor then testified that the defendant stated to him that *176 he later hid his truck and went into the cane field to hide.
After the defendant gave this statement on September 20, 1999, Captain Destor testified that the defendant took the police to a place in the cane field where he had slept the previous nights, to the place where the shooting occurred, and to the area where he dropped the gun. Captain Destor stated that the grass was flattened in the cane field and that there were empty food containers. Captain Destor then testified that they went back to the defendant's trailer, where he reenacted the struggle and shooting. After this was finished, the defendant and the detectives went back to the bureau to obtain a taped confession.
Sergeant Larry LeBlanc of the St. John Sheriffs Office was a criminal investigator at the time of the murder. He also responded to the scene of the shooting on September 18, 1999. LeBlanc testified that he did not find a gun. He learned through his investigation that the defendant and the victim had been in a relationship for four years prior to the murder. He also learned that the defendant was hiding in a cane field; however, on the night of the killing, he could not locate him, only his vehicle.
On September 20, 1999, at 11:55 a.m., LeBlanc took the taped statement from the defendant. LeBlanc testified that, according to the defendant's taped statement, the victim and the defendant had sexual relations on the night in question. After the two had sex, both exited the trailer, at which time the victim tried to get money from the defendant to buy cocaine. An argument started, and the victim took out a gun from her bra area. LeBlanc testified that the defendant stated to him that he took the gun from her and a shot was fired. The victim then ran down Fig Street.
The defendant got into his vehicle and started looking for her, but he could not find her. The defendant next hid his vehicle, and then began running down the street, where the pistol fell out of his back pocket. He could not find the pistol, and then ran when he saw headlights while looking for the gun. LeBlanc testified that after the defendant gave the taped statement, Joseph was placed under arrest. The statement was played for the jury at trial.
In the defendant's taped confession, he explained that he had a sexual relationship with the victim for four years, and in return he would give her money for cocaine. The defendant also stated that he twisted the victim's hand and took the gun from her. The defendant did not know how the gun went off. The defendant also stated in his statement that, after they had sex and the victim was getting dressed, he did not notice the victim with a gun.
The defendant testified very briefly at trial. He stated that he did not kill Andrea Washington. On cross-examination, the defendant claimed that the detectives were mistaken in their testimony regarding his confession, and that he never told the police that he had shot Andrea Washington.
Yvette Prembrook[1] testified for the defense. She stated that she had known the victim and the defendant for 15 years. She testified that she witnessed the murder of Andrea Washington. According to Prembrook, she saw the victim coming down the street from Joe Joseph's trailer on September 18, 1999. Prembrook asked her where the defendant was, and she *177 responded that he was at the trailer drinking. The victim then asked Prembrook where she could find some drugs. Prembrook testified that she told her to go around the projects and she would probably find some. According to Prembrook, Robert Williams, another person at the scene, then said that he knew where to find drugs. Williams left and then returned with a person named Kelvin Thomas, a/k/a Four.
Prembrook testified that she overheard the victim and Thomas arguing because the drugs Thomas sold to the victim were apparently bad. The victim demanded her money back, which Thomas refused. Prembrook then stated that the victim said she would get her money from Thomas's mother. According to Prembrook, Andrea turned away and started going toward Thomas's mother's house. Thomas then slapped the beer can out of the victim's hand and told her that she was not going to get her money and that she already owed him $50.00.
Prembrook testified that Thomas then pulled out a gun and shot Andrea Washington. The victim then tried to get up and pleaded out loud for someone to help her. She stated that she witnessed the shooting while standing near a church looking through a fence. Prembrook claimed that she told people at the scene, including Son Collins, a police officer, that Kelvin Thomas, and not Joe Joseph, shot the victim.
On cross-examination, Prembrook admitted that she pled guilty to felony theft on May 11, 1988. She also admitted that she used crack cocaine. Prembrook's version of the murder was reduced to writing. She stated that the defense counsel wrote out the statement as told by her, and she signed and dated it. After this written statement, which was dated August 17, 2000, was turned over to the detectives, Prembrook met with Captain Destor and Detective Kenneth Mitchell on September 15, 2000. She admitted at trial that she told the detectives on September 15, 2000 that Joe Joseph killed Andrea Washington because that was what she read in the newspaper. She also admitted that she told the police that she knew nothing of the murder and she was not in the vicinity of the murder on September 18, 1999. She explained that she denied the written statement to police because, at that time, Kelvin Thomas was not in jail and she was scared of him.
Prembrook also testified that she went back to the police to inform them that the written statement was in fact true. She claimed that the detectives told her that a man confessed to the murder, and that they had all the evidence.
In the State's rebuttal, Kelvin Thomas testified at trial. He stated that he knew Andrea Washington and that he did not kill her. Thomas testified that he was home that night with his mother, and that he never left the house that night. On cross-examination, Thomas admitted that he recently had been convicted of principal to distribution of crack cocaine.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends that there was insufficient evidence to support the jury's conviction because the only evidence connecting him to the crime was a suspect confession.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Under Jackson, *178 a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Lapell, 00-1056 (La.App. 5 Cir. 12/13/00), 777 So.2d 541, 545.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.
A different standard is applied on appellate review. The Louisiana Supreme Court recently commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[2]
The defendant was charged with second degree murder in violation of LSA-R.S. 14:30.1. The jury found the defendant guilty of manslaughter. Manslaughter is defined in part as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
LSA-R.S. 14:31.
The defendant contends that the jury erred in finding him guilty of manslaughter because the only evidence to connect *179 Joe Joseph to the shooting was a self-incriminating statement. The defendant specifically asserts that it was not reasonable for the trier of fact to have accepted the defendant's "confession." He claims that his "confession" did not make sense because he claimed that the victim was shot during a struggle and the evidence showed that she was shot from a distance greater than two feet. The defendant does not argue that his confession was illegally obtained or that it was obtained in violation of his constitutional rights.
A defendant cannot be convicted on his own uncorroborated confession without proof that a crime has been committed by someone, i.e. without proof of corpus delicti. Once corpus delicti is independently established, a confession alone may be used to identify the defendant as the perpetrator of the crime. State v. Fountain, 93-2561 (La.App. 4 Cir. 12/15/94), 647 So.2d 1254, citing State v. Celestine, 452 So.2d 676 (La.1984).
From the evidence presented at trial, it appears that a jury could reasonably have concluded that the defendant committed manslaughter. The evidence showed that the victim died from a gunshot to the chest. The defendant admitted to the police that he and the victim were in an argument on the night of September 18, 1999. He stated to police that Andrea Washington produced a gun and a struggle ensued. The defendant admitted that he took the gun from the victim and that the gun went off. Officers LeBlanc and Destor both testified that the defendant confessed that there was a struggle and that the victim was shot during that struggle.
It is also important to note that defendant voluntarily presented himself at the police station to confess to this crime; he was not picked up for questioning by the police. He also took officers to the scene of the crime and demonstrated how the shooting took place. The State argues that the lack of gunpowder residue on the victim's clothes or person shows that the gun was fired at a distance greater than two feet. This fact undermines the defendant's statement that the gun went off in a struggle.
The defendant also admitted to police that he hid in the cane fields after the shooting. Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer guilty conscience.[3] The police found defendant's truck concealed in high grass, ostensibly to avoid detection, prior to the time he turned himself in. When defendant led the police to the cane field, they found flattened grass and food containers, which corroborated the defendant's admission that he had hidden there and slept there for two nights.
The defendant argues that Ms. Prembrook offered a more plausible version of the shooting than the defendant's "far-fetched" claims. When the trier-offact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.[4] It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence.[5] It is *180 apparent that the jury believed the detectives' testimony and the taped statement of the defendant rather than the testimony of Ms. Prembrook, whose credibility was undermined by her recantation of her first statement and then the withdrawal of that recantation at trial.
We find that the jury's verdict is supported by the evidence. We affirm the defendant's conviction.
AFFIRMED.
NOTES
[1] The appellant's brief spells the name, Pembrook; however, the transcript indicates that her name is spelled Prembrook. It will be spelled Prembrook in this memorandum.
[2] State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
[3] State v. Fuller, 418 So.2d 591, 593 (La. 1982); State v. Cazenave, 00-183 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 860.
[4] State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Jiron, 96-319 (La.App. 5 Cir. 10/1/96), 683 So.2d 769, 771.
[5] State v. King, 436 So.2d at 563; State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1233, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.