858 So.2d 80 (2003)
STATE of Louisiana
v.
Earl BRADLEY.
No. 03-KA-384.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2003.
*82 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Counsel for Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Alan D. Alario, II, Terry M. Boudeaux, Assistant District Attorneys, Gretna, LA, Counsel for Plaintiff-Appellee.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD, and EMILE R. ST. PIERRE, Pro Tempore.
EMILE R. ST. PIERRE, Judge Pro Tem.
On October 28, 1999, a Jefferson Parish Grand Jury returned an indictment charging defendant, Earl Bradley, along with co-defendant, Albert T. Russell, with the second degree murder of Barton Sanford in violation of LSA-R.S. 14:30.1. Bradley pled not guilty and subsequently filed a motion to suppress evidence, which was heard and denied by the trial judge. On August 21, 2000, Bradley proceeded to trial which resulted in a mistrial. On June 11, 2002, a second jury trial was held and a twelve-person jury found Bradley guilty as charged. On July 18, 2002, Bradley was sentenced to life imprisonment at hard labor without benefit of parole, probation, *83 or suspension of sentence. Bradley now appeals.
FACTS
On August 1, 1999, the body of Barton Sanford was found beneath a trailer located at 7501½ Fourth Street near the Happy Hour Saloon in Marrerro. The cause of death was a bullet wound to the chest. Detective Donald Meunier of the Jefferson Parish Sheriff's Office investigated and eventually developed Bradley as a possible suspect. On August 7, 1999, Detective Meunier interviewed Bradley and obtained several statements.
In the statements, Bradley indicated that he had attended a party at the Happy Hour Saloon on Friday, July 30, 1999 but denied knowing the victim. However, when confronted with a surveillance video tape taken outside of the Happy Hour Saloon on July 30, 1999 showing him with the victim, Bradley recanted his prior statements. Bradley told Detective Meunier that the victim wanted to purchase crack cocaine and that he had arranged for the victim to make the purchase from an individual named Jason Rivet. However, before the drug deal was completed, Bradley stopped the drug transaction and pulled the victim away because "something looked like it was going down." Bradley subsequently returned to the bar where he remained for approximately one hour before going to the Budget Motel where he remained for the night.
Detective Meunier also interviewed an eyewitness, Amy Larck, who identified Bradley as the shooter. At trial, Lark testified that at the time of the shooting she was a drug addict who supported her habit by prostitution. Larck knew both Bradley and Russell and had been at Russell's house on the evening of July 30, 1999. While there, she overheard Bradley ask Russell if he had a gun to which Russell responded, "I got that for you."
Later that evening, Larck was outside the Happy Hour Saloon where she smoked crack for most of the night. Later that night, while inside the Happy Hour Saloon, Bradley informed Larck that he had a "trick" for her, whom Larck identified as the victim. Larck and Bradley left the bar and walked around the block to give the victim time to come outside. Larck then walked into an alley behind the Happy Hour Saloon where she met the victim. Larck agreed to perform oral sex upon the victim and the victim displayed approximately sixty dollars. At that moment, Bradley and Russell walked around the corner. Bradley had a gun and was screaming at the victim. Larck began backing out of the alley and heard a gunshot. She then ran from the scene and ended up at the Budget Motel with Bradley. After five to ten minutes, Larck left the motel and received a ride to the levee from a stranger who later raped her. She later reported the rape to police but did not mention the murder at that time. Not until police picked her up in connection with the homicide investigation did she mention anything to police about the murder.
After Larck's testimony, the State rested and the defense called its first witness, Karen Breaux. Breaux testified that on July 30, 1999 she was at Russell's house until midnight and did not recall either Larck or Bradley being at the home that day or evening. At around midnight that evening, she went to the Happy Hour Saloon where she observed the victim and Bradley engaged in an argument outside. The victim was accusing Bradley of having ripped him off which Bradley denied. After a brief moment, Breaux left the area fearing police would arrive shortly.
The defense also called Tammy Disher who testified that, on the evening of July 30, 1999, she saw the victim fighting with *84 an individual named Jason Rivet, who was carrying a gun. She did not see an argument between Bradley and the victim. However, Disher testified that while she was incarcerated with Larck prior to trial, Lark had told her that she was involved in the killing of the victim. Larck told her that she was supposed to "trick" the victim and that Bradley was supposed to rob him but that something went wrong and Bradley ended up shooting the victim.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the evidence was insufficient to support his conviction.[1]
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Joseph, 01-1211 (La.App. 5 Cir. 4/10/02), 817 So.2d 174. In applying this standard, the reviewing court will not assess the credibility of witnesses, nor re-weigh evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986); State v. Ellwood, 00-1232 (La.App. 5 Cir. 2/28/01), 783 So.2d 423, 427. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Rivers, 01-1251 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 219, writ denied, 02-1156 (La.11/22/02), 829 So.2d 1035. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual finding. Id.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.
To prove second degree murder, the state must show the killing of a human being and that the defendant had the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1(A). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances and actions of the defendant. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
*85 In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the identity of the perpetrator. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69. Where the key issue is identification the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
Bradley claims Larck's testimony was not credible due to inducements made for it by the State and several discrepancies in her testimony. First, defendant points to Detective Meunier's interview with Larck. At trial, Larck testified that, during her interview, she was on crack cocaine and lied to investigators throughout her eleven-hour interview. It was not until Detective Thurman, one of the investigators in the case, informed her that she could be charged with conspiracy to commit murder, did Larck implicate Bradley.
While the detective's statement to Larck prompted her to implicate Bradley, it does not appear to have undermined her credibility. Larck testified that the reason she initially lied to investigators was because she was afraid of Bradley and Russell and did not want to get involved in the investigation but testified that her statement implicating Bradley was the truth. This was consistent with her statement to the defense's witness, Tammy Disher. Disher testified that while she was incarcerated with Larck, Larck informed her that Bradley had shot the victim. The fact that Larck told both Detective Thurman and Disher that Bradley shot the victim alleviates concerns that Detective Thurman's statement pressured Larck into lying about the perpetrators of the murder.
Additionally, Bradley contends Larck's testimony was further discredited by the deal she received in exchange for her testimony. Bradley notes that Larck had previously pled guilty to several felonies for which she received concurrent five-year sentences on each of the charges and was not billed as a habitual offender. However, Larck denied the existence of any plea agreement and further testified that she had been sentenced prior to testifying.
Even if a deal had been made, a conviction may be based on testimony of someone making a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face. United States v. Osum, 943 F.2d 1394, 1405 (5th Cir. 1991); State v. Neal, 00-674 (La.6/29/01), 796 So.2d 649, 659, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed. 231 (2002). In the instant case, Larck's testimony was not incredible or insubstantial and, therefore, the existence of a deal or a lighter sentence than she would have received had she been billed as multiple offender did not undermine the reliability of her testimony.
Bradley also cites numerous handwritten letters sent by Larck to various prosecutors that had worked on the case at one time or another. In some of the letters, Larck claimed that her memory of events surrounding the murder was getting "fuzzy" and that unless she was released from prison she would not testify at trial. Those letters were followed by letters apologizing for previous letters and indicating her willingness to testify, as well as additional requests that she be released from prison. Bradley contends that the letters show that Larck would have said or done anything to get out of prison thereby lessening the credibility of her testimony.
However, as referenced above, Larck had been sentenced and had begun serving her sentence prior to trial. There was no evidence that the State promised Larck anything for her testimony. Therefore, we find that the content of the letters did not lessen Larck's credibility.
*86 Lastly, Bradley alleges numerous inconsistencies in Larck's testimony, further raising the issue of her credibility. While there were numerous inconsistencies in Larck's testimony, the inconsistencies concerned Larck's activities prior to and after the shooting. These were not determinative of any element of the offense. Larck's testimony was not internally inconsistent with any other evidence. Although she gave conflicting statements at times, she consistently testified as to the location of the murder and that Bradley shot the victim. The jury in the instant case heard Larck's testimony and her reasons for initially lying to investigating officers. The jury chose to accept her testimony in light of circumstantial evidence that Bradley initially lied to police about knowing the victim and that he had been engaged in an argument with the victim on the night of the murder.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Kinsel, 00-1610 (La.App. 5 Cir. 3/28/01), 783 So.2d 532, 537, writ denied, 01-1230 (La.3/28/02), 812 So.2d 641. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Marcantel, 00-1629 (La.4/30/02), 815 So.2d 50, 56; State ex. rel Graffagnino v. King, 436 So.2d 559, 563 (La.1983).
Considering the above and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant committed second degree murder.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
Bradley contends that his statements should have been suppressed because they were not legally obtained. Bradley argues that the length of the interview, the failure of detectives to advise him of his constitutional rights prior to each of his statements, and the fact that he was confronted with the results of a polygraph examination contributed to a coercive atmosphere, thereby rendering his statements involuntary.
At the hearing on the motion to suppress, Detective Meunier testified that Bradley, who was in jail on unrelated charges, was brought to the Detective Bureau for questioning in reference to the murder. The detective informed Bradley of the nature of the investigation and asked if he would talk to him concerning some aspects of the case. Detective Meunier subsequently advised Bradley of his constitutional rights and also presented him with a "RIGHTS OF ARRESTEE OR SUSPECTS" and "WAIVER OF RIGHTS" form, which Bradley signed and initialed in the detective's presence.
According to Detective Meunier and the waiver of rights form, Bradley was advised of his rights at 12:45 p.m. on August 2, 1999. Bradley gave his first statement to Detective Meunier at 1:21 p.m., a second statement was given at 2:05 p.m., a third statement was given at 5:32 p.m., a fourth statement was given at 6:45 p.m., and a final statement was given at 7:37 p.m. Detective Meunier testified that he did not advise Bradley of his constitutional rights prior to each of those statements but did reiterate to Bradley that he had previously been advised of his rights.
The testimony also established that in the time between Bradley's second and third statements, Detective Meunier showed Bradley a surveillance videotape *87 taken outside the Happy Hour Saloon which clearly showed Bradley with the victim outside of the bar, contradicting Bradley's previous statements that he did not know the victim. Additionally, it was revealed that, at some point during the interrogation, Bradley was subjected to a polygraph examination. Lieutenant Stacy Phillips, a polygraph examiner with the Jefferson Parish Sheriff's Office, testified that he performed the polygraph examination. Lieutenant Phillips did not advise Bradley of his constitutional rights prior to the examination but he did have him sign a waiver indicating that he was taking the polygraph examination voluntarily. Phillips testified that, after the test, he informed Bradley that the examination results showed extreme deception. He then informed Bradley the he may want to consider telling the investigators the truth concerning what occurred.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. LSA-R.S. 15:451; State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998).
A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation. State v. Quest, 00-205 (La. App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless supported by the evidence. Id.
In the instant case, the testimony and evidence reflect beyond a reasonable doubt that Bradley was advised of his constitutional rights before the first of the five statements was taken. The "RIGHTS OF ARRESTEE OR SUSPECTS" form indicated Bradley had attended one year of college and that Bradley was advised of his right to remain silent, that anything he said could and would be used against him, that he had the right to an attorney and if he could not afford an attorney that one would be appointed for him, and that he could stop answering questions at any time. Bradley initialed next to each of those rights and signed the form indicating that he had been advised of those rights. Bradley additionally signed a "WAIVER OF RIGHTS," which was included at the bottom of the "RIGHTS OF ARRESTEE OR SUSPECTS" form.
Although Bradley was advised of his Miranda/constitutional rights, he contends that the length of the interview and the fact that he was not free to leave, because he was in jail on an unrelated charge, created a coercive atmosphere. The record reflects that Bradley was questioned over the course of seven hours. However, the fact that questioning extended for six or seven hours is not per se unconstitutionally coercive. Jenner v. Smith, 982 F.2d 329, 334 (8th Cir.1993), cert. denied, 510 U.S. 822, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993). In the present case, the length of the interview was primarily attributable to the fact that Bradley initially denied knowing the victim when it was apparent from the surveillance video that he did. Here, the length of the interrogation was not attributable to coercion, but rather the length of the interview was precipitated by Bradley's deception in his initial statements. *88 See, State v. Thomas, 30,490 (La. App. 2 Cir. 4/8/98), 711 So.2d 808, 812, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8 (a case in which the length of the interrogation was not attributable to coercion, but stemmed instead from defendant's slowly increasing willingness to talk).
Bradley also argues that the investigating officers advised him of his rights only once during the entire seven-hour interrogation and failed to advise him of his rights prior to each statement. Jurisprudence, however, has not mandated such multiple warnings. State v. Brown, 445 So.2d 456, 462, (La.App. 5 Cir.1984). As noted by the Louisiana Supreme Court in State v. Harvill, 403 So.2d 706, 709 La. 1981), "[a] requirement that the Miranda warnings be repeated before each separate interrogation period would quickly degenerate into a formalistic ritual." State v. Brown, supra at 462. As such, the failure to reiterate defendant's Miranda warnings did not create a coercive environment rendering defendant's statements involuntary.
Additionally, Bradley argues that being confronted with the results of the polygraph examination and Lieutenant Phillip's statement that he may want to tell the truth added to the coercive atmosphere. Suggestions that a defendant would be better off to cooperate are not "promises or inducements designed to extract a confession." State v. Lavalais, 95-0320 (La. 11/25/96), 685 So.2d 1048, 1053, cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); State v. Watts, 98-1073 (La.App. 5 Cir. 5/19/99), 735 So.2d 866, 870. Additionally, a confession is not rendered inadmissible because officers "exhort or adjure" an accused to tell the truth, provided the exhortation is not accompanied by an inducement in the nature of a threat or which implies a promise of reward. State v. Robertson, 97-0177 (La.3/4/98), 712 So.2d 8, 31, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155; State v. Watts, supra at 870.
There is no indication in the record that Lieutenant Phillips made any threats or promises to Bradley in order to obtain a statement. Furthermore, it does not appear that it was improper to inform Bradley that his polygraph test results indicated deception. See, Jenner v. Smith, supra at 334 (case in which the United States Eighth Circuit Court of Appeals held it was not improperly coercive to inform a defendant that her polygraph results indicated deception). Bradley had previously waived his constitutional right to remain silent and right to an attorney and signed a waiver indicating that he was voluntarily submitting to the polygraph examination. There was no evidence that Lieutenant Phillips misinformed Bradley of the examination results or misled him into believing the test results could be used in court.
Considering the above, the record establishes that Bradley knowingly and voluntarily waived his constitutional rights and at no point invoked his right to cease talking to investigators. Therefore, we find that the trial judge did not err in denying Bradley's motion to suppress.
This assignment of error is without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case.
Accordingly, for the reasons herein, the conviction and sentence of defendant, Earl Bradley, are affirmed.
AFFIRMED.
NOTES
[1] In the present case, defendant failed to file a post-verdict judgment of acquittal or a written motion for new trial. However, the courts have long recognized a defendant's right to appellate review for sufficiency of the evidence, even in the absence of a written motion for new trial or for post-verdict judgment of acquittal. State v. Washington, 421 So.2d 887, 889 (La.1982); State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 760.